523 S.E.2d 168

**The STATE, Respondent,**

v.

**Henry Antonio FULLER, Appellant.**

**No. 24961.**

Supreme Court of South Carolina.

Heard April 6, 1999.

Refiled Nov. 22, 1999.

238

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, of Columbia, Solicitor Robert M. Ariail, of Greenville, all for respondent.

## ORDER

The Petition for Rehearing is granted. The opinion filed in this case on June 28, 1999, is hereby withdrawn and the attached opinion is substituted in its place.

/s/ Ernest A. Finney, Jr., C.J.
FOR THE COURT

TOAL, Justice:

█ In this criminal matter, Henry Antonio Fuller was convicted for the murder of George Lollis. We reverse and remand.

### FACTUAL/PROCEDURAL BACKGROUND

At approximately 3:00 a.m. on August 15, 1996, George Lollis received a phone call from a security company indicating that the alarm at his convenience store had sounded. Mr. Lollis armed himself with a handgun and traveled in his truck

to the store. His wife, Patricia Lollis, also armed with a gun, remained at home.

After meeting officers at his store and determining there were no problems, Mr. Lollis returned home at around 4:00 a.m. Approximately forty-five minutes later, Mr. Lollis received a second phone call indicating the store alarm had again been tripped. Mr. Lollis exited his house to get in his truck. He again armed himself with a handgun. Mrs. Lollis watched from the house as her husband walked to the truck. Mrs. Lollis testified that she saw two "black figures" running toward her husband. Mr. Lollis was ultimately shot and killed by his attackers.

Henry Antonio Fuller ("Defendant") was arrested for the Lollis murder. Defendant provided a handwritten statement to police. In the statement, Defendant stated that he, Darrell Holmes, and Bernard Holmes had planned to rob the Lollis' home. To perpetrate the robbery, Darrell Holmes went to the Lollis' store to set off the alarm. Defendant and Bernard Holmes waited for Mr. Lollis outside of his home. In their first attempt to rob Mr. Lollis, Defendant and Bernard Holmes were unsuccessful in completing the crime. On their second attempt, Defendant claimed that he attacked Mrs. Lollis and wrestled the gun away from her. Defendant further stated that Bernard Holmes and Mr. Lollis shot each other in an ensuing gun fight. Mr. Lollis died from his wounds. Bernard Holmes was later killed while attempting another, unrelated burglary.

On November 18, 1997, a jury found Defendant guilty of murder and conspiracy. The trial judge sentenced Defendant to life imprisonment without parole for murder and five years, consecutive, for conspiracy. Defendant appeals, raising the following issues:

(1) Did the trial court err in denying Defendant's motion to represent himself at trial?

(2) Did the trial court err by letting a possible accomplice testify that a deceased third-party (decedent) told him that the decedent, Defendant, and another man had committed the murder?

## LAW/ANALYSIS

### A. SELF–REPRESENTATION

Defendant argues that the trial court erred by denying his request to represent himself at trial. We agree.

On November 12, 1997, five days before trial, Defendant's counsel made a motion for a continuance. The trial court denied the motion and fined counsel for being dilatory. On the morning of trial, November 17, 1997, the following colloquy occurred between the trial court and Defendant:

**Court:** Mr. Fuller, is there any reason why you are not going to wear civilian clothes?

**Defendant:** For the record?

**Court:** Yes, sir.

**Defendant:** I'm not happy with Mr.—Mr.—Mr. Allen as my legal counsel.

**Court:** Well, that's not the question I asked you right now. We're talking about the clothing first. Why—It makes no difference to me, but I have been where Mr. Allen is and it doesn't make an impression on the jury if you are sitting in your jail suit. However, that's your call, and I just want to make sure that that's your call.

**Defendant:** Your honor, I don't wish to continue with Mr. Allen as my counsel because his services have been ineffective. He hasn't done anything to prepare for this trial.

**Court:** Well, your motion to have him releaved [sic] is denied. We're going to proceed with the trial and Mr. Allen is going to be your lawyer. Now, the question is, do you want to stay dressed like that, or do you want to get your clothes on and come out here and be presentable to the jury? And I don't care. It's up to you.

**Defendant:** Your honor, if you're going to allow him to continue as my counsel I'd rather—I'd rather represent myself.

**Court:** I'm not going to let you do that. Now Mr. Allen is going to be representing you in this case.

The above colloquy occurred before the charges were read to Defendant and before the jury was selected and sworn.

Under the Sixth Amendment, an accused may waive the right to counsel and proceed *pro se*. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Reed*, 332 S.C. 35, 503 S.E.2d 747 (1998). That right must be preserved even if the court believes that the defendant will benefit from the advice of counsel. *United States v. Singleton*, 107 F.3d 1091 (4th Cir.1997). Once the defendant has waived counsel, the trial judge has the responsibility to ensure that the accused is informed of the dangers and disadvantages of self-representation, and makes a knowing and intelligent waiver of the right to counsel. *Reed, supra.*

A defendant's right to waive the assistance of counsel is not unlimited. The request to proceed *pro se* must be clearly asserted by the defendant prior to trial. *Reed, supra.* If the request to proceed *pro se* is made after trial has begun, the grant or denial of the right to proceed *pro se* rests within the sound discretion of the trial judge. *Singleton, supra; United States v. Lawrence*, 605 F.2d 1321 (4th Cir.1979). In *Lawrence*, the Fourth Circuit held that the defendant's request to proceed *pro se* was untimely because the trial proceedings had already consumed one day during which counsel had conducted their voir dire examination and the jury selected. The only remaining formality was the swearing of the jury. *Lawrence, supra; see also Robards v. Rees*, 789 F.2d 379 (6th Cir.1986) (request for self-representation was properly denied where the clerk had already called the roll of jurors).

The State argues that Defendant's request was untimely because it was made the morning of trial. Defendant, on the other hand, contends the request was timely because it was asserted before the commencement of trial proceedings. We decline to hold that a motion to proceed *pro se* made on the day of trial, but before the commencement of trial proceedings, is either timely or untimely as a matter of law. *See People v. Mogul*, 812 P.2d 705 (Colo.Ct.App.1991). As noted in *Mogul*, there may be a variety of reasons which might excuse a last minute request by a defendant to proceed *pro se. Id.* at 708. Therefore, "it is incumbent upon the trial court to determine whether the request is made for purposes of delay or to gain tactical advantage, and whether the lateness of the request may hinder the administration of justice." *Id.* at 709.

In the instant case, Defendant's request to proceed *pro se* was made in an atmosphere of his escalating dissatisfaction with his attorney. Several days before trial, the trial court fined Defendant's attorney for being dilatory. On the morning of trial, Defendant complained to the trial court that his counsel had been ineffective in preparing for trial. This suggests that Defendant's purpose in making the request was not to delay or stall the proceedings, but rather to address his growing concerns about his attorney. More significantly, the trial court failed to conduct an adequate hearing to fully assess the purpose behind Defendant's request or to determine what effect granting the request would have had on the proceedings. This omission by the trial court requires reversal.

## B. HEARSAY TESTIMONY

Defendant argues that the trial court erred by letting a possible accomplice, Bernard McKinney, testify that Bernard Holmes, a third-party now deceased, had told the accomplice McKinney [1] that decedent, Defendant, and Darrell Holmes had murdered Mr. Lollis. We agree.

Before trial, the State informed the trial court that it intended to call Bernard McKinney to testify that decedent had told him that decedent, Darrell Holmes, and Defendant were involved in Mr. Lollis's murder. The State argued the statement was admissible as an exception to hearsay under Rule 804(b)(3), SCRE [2] (statement against interest by unavail-

---

**1.** It is unclear whether McKinney's role in the robbery of Mr. Lollis would qualify him as a coconspirator such that his testimony would not be hearsay under Rule 801(d)(2)(E).

**2.** Rule 804(b)(3), SCRE, provides:

(b) **Hearsay Exceptions:** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) *Statement Against Interest:* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

able declarant). Defendant moved *in limine* to exclude the statement, arguing the statement was not reliable and violated his right to confront and cross-examine the witness. Defendant argued the statement was unreliable because McKinney was trying to exculpate himself, since he was also charged with murder and conspiracy at that time.

The trial court ruled that the statement was admissible under Rule 804(b)(3), SCRE. The court also stated that the rule set forth in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) [3] would not be violated because Defendant and McKinney were not being tried together in the same trial.

When McKinney was finally called to the stand to testify, he stated that he, decedent, and Darrell Holmes had planned to rob the Lollis' weeks before the murder. In fact, McKinney and the Holmes' had made two attempts to rob Mr. Lollis prior to the murder. McKinney testified that the plan was for Darrell Holmes to trip the alarm at the Lollis' store, while McKinney and decedent waited for Mr. Lollis outside of his residence. McKinney claimed that on the night of the murder, he was at a friend's house and did not participate in the crime. McKinney further claimed that three to four days after the murder, decedent told him that decedent, Darrell Holmes, and Defendant had gone to the Lollis' home on the night of the murder and attempted to rob Mr. Lollis. The decedent further told McKinney that Mr. Lollis shot him, and if "[Defendant] wouldn't have been there he probably would have got shot in the back."

■ The hearsay statements recounted by McKinney essentially amounted to statements by a deceased third-party that inculpated Defendant and subjected the declarant to criminal liability. Thus, the issue before this Court is whether a non-self-inculpatory statement, which is collateral to a self-inculpatory statement, may nonetheless come in under Rule

3. *Bruton* held that where a confession by a codefendant, who did not testify, was admitted in evidence at a joint trial, a defendant was denied his constitutional right of confrontation, even though the jury was instructed that the codefendant's confession must be disregarded in determining the defendant's guilt or innocence. *See State v. Miller,* 266 S.C. 409, 223 S.E.2d 774 (1976).

804(b)(3), SCRE, as a statement made by an unavailable declarant against his penal interest. We conclude that such statements are inadmissible.

The U.S. Supreme Court has held that third-party statements such as the one involved in this case are inherently unreliable. *See Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). In *Lilly*, a plurality of justices found accomplices' confessions that inculpate a criminal defendant do not fall within a firmly rooted hearsay exception. *Id.* 527 U.S. at ——, 119 S.Ct. at 1898–99. The Court, however, went on to conclude that such hearsay statements can be admissible where they are supported by a showing of "particularized guarantees of trustworthiness." *Id.* 527 U.S. at ——, 119 S.Ct at 1899–1900. The Court based the admittance of such statements in part on the residual or catchall hearsay exception found in Federal Rule of Evidence 807 (formerly Rule 803(24), FRE). Unlike the Federal Rules of Evidence, South Carolina has expressly chosen not to adopt such a catchall exception. *See* Notes to Rule 803, SCRE. Since our rules of evidence do not contain a catchall hearsay exception, our courts do not undertake such an analysis when determining admissibility.

Our holding on this issue is in accord with the United States Supreme Court's interpretation of federal Rule 804(b)(3), which is identical to Rule 804(b)(3), SCRE. In *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the United States Supreme Court clarified the scope of Rule 804(b)(3), FRE, with regard to statements that inculpate the defendant as well as subject the declarant to criminal liability. The Court stated: "the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." *Williamson*, 512 U.S. at 600, 114 S.Ct. at 2435, 129 L.Ed.2d at 483. The Court further held:

In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller

confession, and this is especially true when the statement implicates someone else.

*Id.* at 600–01, 114 S.Ct. at 2435, 129 L.Ed.2d at 483. However, as noted in *Williamson,* it may very well be that a statement which qualifies under Rule 804(b)(3) may also be used against a criminal defendant. For example, an accomplice's self-inculpatory statement combined with other independent evidence can inculpate a criminal defendant: " 'I was robbing the bank on Friday morning' coupled with someone's testimony that the declarant and the defendant drove off together Friday morning, is evidence that the defendant also participated in the robbery." *Id.* at 603, 114 S.Ct. at 2436, 129 L.Ed.2d at 485. Moreover, a statement is not *per se* inadmissible simply because the declarant names another person. Nevertheless, such statements must meet the strict requirements of Rule 804(b)(3).

### CONCLUSION

Based on the foregoing, we **REVERSE** the trial court and **REMAND** for a new trial.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.