529 S.E.2d 561

**The STATE, Respondent,**

v.

**Corey PRIOLEAU, Appellant.**

**No. 3142.**

Court of Appeals of South Carolina.

Heard Dec. 8, 1999.

Decided April 3, 2000.

Rehearing Denied May 27, 2000.

Assistant Appellate Defender Aileen P. Clare, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Arthur H. Wilder, Jr., of Sumter, for respondent.

HOWARD, Judge:

Corey Prioleau was convicted of kidnapping, armed robbery, possession of a weapon during a violent crime, and possession of a pistol by a person under the age of twenty-one. The trial court sentenced Prioleau to fifteen years for kidnapping, fifteen years for armed robbery, and five years for each weapons charge, with all sentences running concurrently. Prioleau appeals, arguing the trial court erred in (1) admitting a non-

self-inculpatory statement of an unavailable witness under Rule 804(b)(3), SCRE; (2) permitting an unduly suggestive, in-court, photo identification of Prioleau as the perpetrator; and (3) failing to grant a directed verdict on the charge of possession of a pistol by a person under the age of twenty-one. We reverse and remand for a new trial.

## FACTS

Late in the evening of June 17, 1997, teenagers Chris Branham, Amy Vance, and Melanie Lively (victims) were sitting together in Branham's Ford Explorer in the parking lot of the Burger King restaurant in Sumter, South Carolina. As they began to leave, two men got out of another vehicle, leaving two men inside. They began walking towards Branham's Explorer. One of the men approached Branham, put a gun to his chest, and told him to climb into the back seat. The man assumed the driver's seat, handing the gun to the second assailant, who entered the back seat. With the victims inside, the assailants drove Branham's Explorer to a field approximately eight miles away, where they released the victims. The assailants then left in the Explorer. The vehicle was discovered by police the next night, abandoned and destroyed by fire.

On July 18, 1997, Devon Dinkins went to the police and identified himself as one of the two men who had remained in the other vehicle on the night of the incident. He gave the following narrative statement:

> I'll start by who all was there at Burger King that night about a month or so ago. It was me, Tiawon Tindal, Michael Dinkins, Corey Prioleau. We were having a conversation. I forgot how it got started, but Corey was saying something about carjacking. I was telling him that I didn't believe he was going to do this because they had talked about doing a jacking before or something. Corey looked around and said "You don't believe me" or something like that and next thing I knew Corey got out the car and I seen the gun. I didn't even know the gun was there until then. It was a dark gun. He was saying something about a white Suburban or Blazer type vehicle that was parked there at Burger King. The people getting into this vehicle were

young Caucasian kids. I saw about three, one boy and two girls. Corey got out the car, Tiawon's car. Mike got out the car. They walked around the front of the car and me and Tiawon was saying we didn't believe this was happening. We left and went to my neighbor's house and stayed there for about 30 minutes. Then I left and went home and Tiawon left and went home. I didn't see Mike or Corey again until about two weeks later and the conversation didn't come back up.

Prioleau and Devon Dinkins's cousin, Michael Dinkins, were each charged with kidnapping, armed robbery, possession of a weapon during a violent crime, and possession of a pistol by a person under twenty-one years of age.

Identification was a major issue at trial. According to police notes, at least one of the initial descriptions of the assailant who drove Branham's Explorer indicated he was bald. The assailants were described to be about 5'8" and 5'9" tall. Branham and Vance later identified Prioleau as the driver from a photo line-up. However, at trial Prioleau was described as being about 6'2" tall, with hair.

When the State called Devon Dinkins as a witness, he refused to testify, asserting his Fifth Amendment privilege against self-incrimination. The State then offered Dinkins's pre-trial statement. The defense objected on multiple grounds, including that the statement was inadmissible hearsay. The court admitted the statement under the hearsay exception found in Rule 804(b)(3), SCRE, as a prior statement by an unavailable witness which was against the declarant's penal interest.

The jury found Prioleau guilty as charged. This appeal follows.

## ISSUES PRESENTED

**I. Did the trial court abuse its discretion by admitting the statement of Devon Dinkins into evidence pursuant to Rule 804(b)(3)?**

**II. Did the trial court err by allowing an in-court photographic identification of Prioleau as the perpetrator?**

**III. Did the trial court err in denying the motion for directed verdict on the charge of possession of a pistol by a minor?**

## LAW/ANALYSIS

**I. Did the trial court abuse its discretion by admitting the statement of Devon Dinkins into evidence pursuant to Rule 804(b)(3)?**

First, Prioleau claims the trial court erred in admitting the statement of Devon Dinkins. We agree.

An abuse of discretion standard is applied to a trial court's ruling on the issue of whether a statement is admissible as a declaration against penal interest under Rule 804(b)(3), SCRE. *State v. Kinloch*, 338 S.C. 385, 526 S.E.2d 705 (2000). Where the statement is not offered to exculpate the accused, the rule provides a two step inquiry. The first step is to determine that the witness is unavailable. In this case, satisfaction of this criterion is not disputed. *See* Rule 804(a)(1) & (2), SCRE; *State v. Doctor*, 306 S.C. 527, 413 S.E.2d 36 (1992). The second prong of the inquiry is to determine whether the statement

> was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Rule 804(b)(3), SCRE.

Our supreme court recently decided that Rule 804(b)(3) does not allow the admission of a non-self-inculpatory statement which is collateral to a self-inculpatory statement. *State v. Fuller*, 337 S.C. 236, 523 S.E.2d 168 (1999). The court noted that Rule 804(b)(3), SCRE, is identical to federal rule 804(b)(3). Consequently, the court relied upon the United States Supreme Court's analysis of the federal rule as found in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

In *Williamson,* the Supreme Court considered the scope of this hearsay exception in the context of circumstances analogous to those here. The plurality opinion of the Court contains several general observations which provide helpful guidance to the trial court, and are pertinent to the analysis in this case.

As the Court first observed, "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson,* 512 U.S. at 599, 114 S.Ct. 2431. But as the Court explained, the fact that a person makes a confession which is broadly self-inculpatory does not make more credible those portions of the confession which are not self-inculpatory. "One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." *Id.* at 599–600, 114 S.Ct. 2431.

When the statement is actually self-*exculpatory,* "the generalization on which Rule 804(b)(3) is founded becomes even less applicable ... [because] [s]elf-exculpatory statements are exactly the ones which people are most likely to make even when they are false." *Id.* at 600, 114 S.Ct. 2431. Consequently, the Court concluded that "the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at 600–601, 114 S.Ct. 2431.

■ The question of whether a statement is self-inculpatory must be answered by viewing the statement in the context of all the circumstances. "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Id.* at 603–604, 114 S.Ct. 2431.

Turning to Devon Dinkins's statement, we conclude that all but the first three sentences of the statement are clearly inadmissible. Devon Dinkins's statement is far from self-

inculpatory. Indeed, it is highly suspect by virtue of its selectivity and self-exculpatory nature. Dinkins was present in the car, and the vehicle was seen by various witnesses who testified at trial. According to Deputy Hicks, Devon Dinkins met the description of the backseat assailant, as did his cousin Michael. It is not unreasonable to assume that as the police investigation narrowed, Devon Dinkins anticipated being identified as one of the four people in the assailants' car, thereby implicating him in the crime. In contrast to his disclosure of being present at the Burger King on the night in question with Prioleau, his cousin Michael, and Tiawon Tindal, the remainder of his statement does not admit to any wrongdoing on his part. Indeed, it sets the stage for total exoneration as an innocent bystander who left before the crime was committed. Aside from the admission of being present, the remainder of the statement is not, under any reasonable view, against the penal interest of the declarant. *See Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) ("Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.").[1]

There may be a portion of Dinkins's statement which the trial court could determine to be admissible under the analysis outlined in *Williamson* and *Fuller,* but that is a decision for the trial court in the first instance. *But see Williamson,* 512 U.S. at 608, 114 S.Ct. 2431 (Ginsburg, J., concurring) (noting that the arguably self-inculpatory statements in that case were too closely intertwined with the self-serving declarations to be ranked as trustworthy). Even if all or a portion of the first part of the statement placing Devon Dinkins with Prioleau, Tindal, and Michael Dinkins at the scene of the crime is sufficiently self-inculpatory to be considered trustworthy, the remainder of the narrative is not self-inculpatory, and it was

---

1. Though Devon Dinkins was not arrested for the crime, we believe his statement must also be viewed with suspicion because he is a possible accomplice. *See State v. Fuller,* 337 S.C. 236, 523 S.E.2d 168 (1999) (collateral, non-self-inculpatory statement of possible accomplice inadmissible); *see also Lee,* 476 U.S. at 541, 106 S.Ct. 2056 ("when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect").

error to have admitted it. *Id.* at 600–601, 114 S.Ct. 2431. ("In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory."); *see also Fuller,* 337 S.C. at 243–45, 523 S.E.2d at 172.

■ Having concluded the introduction of Dinkins' statement under Rule 804(b)(3) was an error constituting an abuse of discretion, we must now consider whether the error warrants reversal of Prioleau's convictions.

In *State v. Dinkins,* 339 S.C. 597, 529 S.E.2d 557 (Ct.App. 2000), this Court affirmed the conviction of Prioleau's co-defendant, Michael Dinkins. Despite finding that the trial court erred in admitting Devon Dinkins's statement, this Court concluded the error was harmless.[2] However, in this case, we find that Devon Dinkins's statement was critical evidence in the State's case against Prioleau and therefore its admission cannot be considered harmless error. The statement placed Prioleau armed with a pistol at the scene of the crime by a person who knew him and whose ability to identify him could not be seriously questioned and described Prioleau's comments about car-jacking and his approach towards the victims' car. This evidence was not cumulative to other testimony. *See State v. Ballen,* 333 S.C. 378, 510 S.E.2d 226 (Ct.App.1998) (finding error in the admission of hearsay testimony harmless, where testimony was merely cumulative to other properly admitted evidence).

■ The only corroboration of this evidence was the testimony of the victims, whose identification of Prioleau was subject to attack because the early descriptions of the driver arguably did not match him. The victims' identifications of Prioleau were not as strong as their identifications of Michael Dinkins. "When a witness' testimony is disputed or his credibility called into question, other testimony verifying the facts or opinions given by the witness is not merely cumula-

---

2. Both Prioleau and Michael Dinkins argued on appeal that the statement's admission violated their Confrontation Clause rights. Although this court addressed this argument in *Dinkins,* we need not address it here because we reverse on the ground that the statement constituted inadmissable, prejudicial hearsay under the Rules of Evidence.

tive." *Doctor*, 306 S.C. at 530, 413 S.E.2d at 38. Moreover, Prioleau made no self-incriminating statements to police, whereas Michael Dinkins admitted his involvement to police. Considering these factors, we find the error in admitting the statement cannot be considered harmless.

## II. Did the trial court err by allowing an in-court photographic identification of Prioleau as the perpetrator?

■ Next, Prioleau asserts the trial court erred in allowing the State to conduct an in-court photo identification of him while he was in plain view of the witness. We agree.

Two of the victims viewed the photo line-up and identified a picture of Prioleau as that of their assailant. The third victim, Lively, was not available to view the photo line-up, and did not attempt to identify Prioleau from it prior to trial. Instead, with Prioleau sitting at the defense table, the assistant solicitor showed Lively the photo lineup and, over defense objection, she picked out Prioleau's picture. Lively subsequently testified, without objection, that she had positively identified Prioleau at the preliminary hearing, and she further identified him without objection in the courtroom.

■ It can hardly be argued that allowing a witness to identify the accused from a photographic line-up while the accused sits in plain view at nearby counsel table is a proper identification procedure, absent some special circumstances not present here. There can be no question but that this procedure is unduly suggestive. Ordinarily, an unduly suggestive identification procedure will cause the exclusion of an identification where, based on various factors, there is a substantial likelihood of misidentification. *State v. Washington*, 323 S.C. 106, 473 S.E.2d 479 (Ct.App.1996).

Prioleau did not object to the subsequent identification testimony by the witness, and a careful reading of his argument on appeal reflects that he does not contend the in-court, face to face, identification was a product of the improper photo line-up procedure. For this reason, we do not analyze whether the circumstances of this improper identification procedure affected the subsequent in-court identification, such that there is "a very substantial likelihood of irreparable misidentifica-

tion." *See State v. Stewart,* 275 S.C. 447, 451, 272 S.E.2d 628, 630 (1980); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

However, the use of this procedure was prejudicial, notwithstanding the victim's allegedly independent identification at trial, because it improperly bolstered the initial photographic line-up identifications made by the remaining two victims. There was little likelihood the witness would be unable to identify Prioleau's photograph while he was seated across from her in the courtroom. By selecting his picture, the witness gave undeserved credibility to the pre-trial identifications made by the remaining two victims. We have previously discussed the critical nature of this testimony, and need not restate it here. Under these circumstances, the improper bolstering was not harmless error. *See State v. Barrett,* 299 S.C. 485, 386 S.E.2d 242 (1989).

### III. Did the trial court err in denying the motion for directed verdict on the charge of possession of a pistol by a minor?

█ In his last argument, Prioleau asserts the trial court erred in denying his motion for a directed verdict on the charge of possession of a pistol by a person under the age of twenty-one. He contends no evidence was introduced as to his age. We find this argument to be without merit.

On appeal from the denial of a directed verdict, the evidence must be viewed in the light most favorable to the State and if there is any direct or substantial circumstantial evidence tending to prove the defendant's guilt, the appellate court must find the motion was properly denied. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998). In considering a directed verdict motion, the trial court is concerned with the existence of evidence rather than with its weight. *Id.*

Sergeant Mike Hicks, the officer who arrested Prioleau, testified that he obtained Prioleau's date of birth as part of the normal processing or "booking" procedure. He testified further that at the time of the crime, Prioleau was under twenty-one years of age. We conclude this testimony was sufficient evidence of Prioleau's age to require submission of this charge to the jury.

## CONCLUSION

For the foregoing reasons, Prioleau's convictions are reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

CURETON and HUFF, JJ., concur.