548 S.E.2d 213

The STATE, Petitioner,

v.

Corey PRIOLEAU, Respondent.

No. 25301.

Supreme Court of South Carolina.

Heard March 22, 2001.

Decided June 11, 2001.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for petitioner.

Assistant Appellate Defender Aileen P. Clare, of the South Carolina Office of Appellate Defense, of Columbia, for respondent.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

PLEICONES, Justice:

Respondent Corey Prioleau ("Prioleau") was convicted of kidnapping, armed robbery, possession of a weapon during the commission of a violent crime, and possession of a pistol by a person under twenty-one years of age in connection with a car-jacking in Sumter County. The Court of Appeals reversed his conviction, finding the trial court committed reversible error in admitting improper hearsay evidence and in allowing a prosecution witness to identify Prioleau from a photographic lineup in the courtroom. *State v. Prioleau,* 339 S.C. 605, 529 S.E.2d 561 (Ct.App.2000). We granted the State's petition for certiorari. We reverse.

This is a companion case to *State v. Dinkins,* 345 S.C. 412, 548 S.E.2d 217 (2001).

### FACTS

Chris Branham ("Branham"), Amy Vance ("Vance"), and Melanie Lively ("Lively") were sitting in Branham's Ford Explorer, preparing to leave the parking lot of a Burger King restaurant in Sumter County late one summer evening. As Branham, the driver of the vehicle, began backing out of the parking space, two men approached the vehicle. One of the men, identified later as Corey Prioleau, reached inside the vehicle, placed a gun to Branham's chest, and demanded Branham exit the vehicle. When Branham complied, the man ordered Branham to get in the back seat.

As Prioleau climbed into the driver's seat, the second man, later identified as Michael Dinkins ("Dinkins"), got in the back seat behind the driver. Once inside the vehicle Prioleau handed the gun to Dinkins, and left Burger King with the three victims in tow. Prioleau drove about eight miles, ending up in a cotton field. During the drive the perpetrators demanded money from the victims and threatened to kill the victims if "they saw blue lights."

Once they arrived at the cotton field, the perpetrators ordered all three victims out of the vehicle and left in Branham's car, threatening to come back and find the victims if

they called the authorities. The victims went to the nearest house and contacted the police. The vehicle was found abandoned the next morning. It had been totally destroyed by fire.

At trial the jury heard testimony from the three victims, including their identifications of Dinkins and Prioleau as the perpetrators. Over both defendants' objections, the court allowed the State to introduce a statement given to police by Devon Dinkins ("Devon").[1] Over Prioleau's objection, the court also allowed Lively to pick Prioleau out of a photographic line-up for the first time during the trial. The jury found both men guilty of all charges.

## ISSUE I

Did the Court of Appeals err in finding the admission of Devon's statement was reversible error?

## ANALYSIS

On certiorari the State does not challenge the Court of Appeals' finding that the introduction of Devon's statement was error. The State maintains, however, that the error was harmless.

---

1. Since the statement is at the heart of the dispute, we include it below in its entirety:

I'll start by who all was there at Burger King that night about a month or so ago. It was me, Tiawan Tindal, Michael Dinkins, Corey Prileau [sic]. We were having a conversation. I forgot how it got started, but Corey was saying something about carjacking. I was telling him that I didn't believe he was going to do this because they had talked about doing a jacking before or something. Corey looked around and said "You don't believe me" or something like that and next thing I knew Corey got out the car and I seen the gun. I didn't even know the gun was there until then. It was a dark gun. He was saying something about a white Suburban or Blazer type vehicle that was parked there at Burger King. The people getting into this vehicle were young caucasion [sic] kids. I saw about three, one boy and two girls. Corey got out the car, Tiawan's car. Mike got out the car. They walked around the front of the car and me and Tiawan was saying we didn't believe this was happening. We left and went to my neighbor's house and stayed there for about 30 minutes. Then I left and went home and Tiawan left and went home. I didn't see Mike or Corey again until about two weeks later and the conversation didn't come back up.

■ Whether the improper introduction of evidence is harmless requires the Court to determine if the defendant's "guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached." *State v. Parker,* 315 S.C. 230, 234, 433 S.E.2d 831, 833 (1993); *see also State v. Reeves,* 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990) (finding an error is harmless if it could not reasonably have affected the result of the trial); *State v. Davis,* 309 S.C. 326, 422 S.E.2d 133 (1992) (even if evidence was wrongly admitted, its admission may constitute harmless error if the evidence did not affect the outcome of the trial). Thus, to determine whether the error in admitting Devon's statement was harmless, we must review the competent evidence presented against Prioleau at trial.

*Victims'/witnesses' identification*

Prior to trial both Branham and Vance identified Prioleau from a photographic lineup as the man who approached the car, placed a gun in Branham's chest, and later drove the car away. During the trial, both made in-court identifications of Prioleau. Both testified that they had an opportunity to see Prioleau as he walked across the well-lit Burger King parking lot towards the vehicle.

Lively did not make a pre-trial photographic identification of Prioleau. However, at trial, and over the defendant's objection, she selected Prioleau's picture from the same lineup previously shown to Branham and Vance. She further testified that immediately upon Prioleau's entrance into the preliminary hearing room, she recognized him as the driver. Lively also identified Prioleau in court. She testified that, on the night of the incident, she "g[o]t a good look at" the driver as he approached the vehicle.

Stacey Hicks testified that she was inside the Burger King on the night of the incident and spoke with four young men in line behind her. In the courtroom she identified Corey Prioleau as one of the four men in line behind her that evening.

*Victims' initial descriptions*

In finding the error prejudicial to Prioleau, the Court of Appeals found it compelling that the description of the driver the victims gave police on the night of the incident did not fit

Prioleau. Detective Mike Hicks testified that the victims described one of the assailants as being five feet, nine inches tall and the other as being five feet, eight inches tall.

Branham testified that he described the driver to police as being five feet, nine inches tall, with a bald head. He testified that the photograph he selected from the lineup depicted a man with hair, that Prioleau had hair on the day of the trial, and that Prioleau was more than five feet, nine inches tall.

Vance testified that she described the driver as being five feet, nine inches tall, and that Prioleau was six feet, two inches tall. She explained that, since the perpetrator had been sitting down, she could not accurately judge his height. She denied describing the driver as having a bald head.

Lively testified that she initially described the driver as being six feet tall, and that she did not describe him as having a bald head. Vance and Lively both testified that the driver was wearing a visor on his head during the incident.

On the basis of this evidence, the Court of Appeals found that the error in admitting Devon's statement was not harmless. It found that the statement

placed Prioleau armed with a pistol at the scene of the crime by a person who knew him and whose ability to identify him could not be seriously questioned and described Prioleau's comments about car-jacking and his approach towards the victims' car. This evidence was not cumulative to other testimony.

State v. Prioleau, 339 S.C. at 613, 529 S.E.2d at 565. The court found the admission of the statement prejudicial because

[t]he only corroboration of this evidence was the testimony of the victims, whose identification of Prioleau was subject to attack because the early descriptions of the driver arguably did not match him. The victims' identifications of Prioleau were not as strong as their identifications of Michael Dinkins.... Considering these factors, we find the error in admitting the statement cannot be considered harmless.

Id. In light of the competent evidence presented at trial, we disagree.

We are not convinced that because the victims' initial descriptions of Prioleau did not exactly match his actual description, the admission of Devon's statement affected the result of the trial. The victims were able to view Prioleau only momentarily as he walked across the parking lot. However, they spent a considerable amount of time with him while he was driving the stolen car. These facts reasonably account for their mistaken descriptions regarding his height.

In addition, although the victims described the driver as being bald, they also described him as wearing a visor. Although Prioleau had hair on the date of his arrest, we note that two weeks elapsed between the date of the incident and Prioleau's arrest.

■ The jury heard all three victims testify that they had an opportunity to view Prioleau. Two of the three victims selected his likeness from a photographic lineup prior to trial.[2] The other victim identified Prioleau prior to trial; all three identified him in court as the one of the perpetrators.[3] Given the evidence presented against Prioleau, we find the error in admitting Devon's statement was harmless.

## ISSUE II

Did the Court of Appeals err in finding the admission of Lively's in-court photographic identification of Prioleau constituted reversible error?

## ANALYSIS

■ The Court of Appeals found that the trial court committed reversible error by permitting Lively to make an in-court photographic identification of Prioleau. The appellate court found that this procedure improperly bolstered the identifications of the other two victims. The State argues any error in allowing the identification was harmless. The State further asserts that, since Prioleau did not argue Lively's

---

2. Prioleau has not challenged the admissibility of the lineup as being unduly suggestive or otherwise improper.

3. We have previously noted that a victim's degree of attention during the commission of a crime is presumably acute. *See State v. Ford*, 278 S.C. 384, 386, 296 S.E.2d 866, 867 (1982).

identification improperly bolstered the other victims' identifications, either before the trial court or in its argument to the Court of Appeals, it was error for the Court of Appeals to consider that argument. We agree that this issue has not been preserved, and therefore, decline to address it.

■■■■ In order to preserve for review an alleged error in admitting evidence an objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge. *State v. New*, 338 S.C. 313, 318, 526 S.E.2d 237, 239 (Ct.App.1999). Furthermore, a party may not argue one ground at trial and an alternate ground on appeal. *State v. Dickman*, 341 S.C. 293, 534 S.E.2d 268 (2000).

At trial, when it became apparent that the solicitor was attempting to elicit an in-court photographic identification from Lively, Prioleau's attorney objected. The only stated basis for the objection was that "[the solicitor is] in essence doing a lineup in court." Counsel did not argue that the identification improperly bolstered the other victims' testimony. His only argument was that the procedure was unduly suggestive. Prioleau's brief to the Court of Appeals argued that the identification procedure was unduly suggestive, since Lively could simply look at Prioleau, who was present in the courtroom at the time, and pick his photograph from the lineup. The Court of Appeals did not base its conclusion on a finding that the procedure was unduly suggestive, but found

> the use of this procedure was prejudicial, notwithstanding the victim's allegedly independent identification at trial, because it improperly bolstered the initial photographic lineup identifications made by the remaining two victims. There was little likelihood the witness would be unable to identify Prioleau's photograph while he was seated across from her in the courtroom. By selecting his picture, the witness gave undeserved credibility to the pre-trial identifications made by the remaining two victims.... Under these circumstances, the improper bolstering was not harmless error.

*State v. Prioleau*, 339 S.C. at 615, 529 S.E.2d at 566.

Prioleau did not base his objection at trial on the theory that the identification improperly bolstered the identifications

made by Branham and Vance. Because the Court of Appeals considered a basis for reversal which was neither presented below nor argued on appeal, we reverse its finding as to this issue. *See, e.g., State v. Conyers,* 326 S.C. 263, 487 S.E.2d 181 (1997) (argument not made to trial court not preserved for review).

## CONCLUSION

As to Issue I, we conclude that the admission of Devon's statement was harmless error. Regarding Issue II, the Court of Appeals improperly considered a grounds for reversal not raised below. For these reasons, we REVERSE the Court of Appeals' decision and affirm Prioleau's conviction.

MOORE, Acting C.J., WALLER and BURNETT, JJ., and Acting Justice GEORGE T. GREGORY, Jr., concur.