# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Rohaime Jamar Hopkins, Appellant.

Appellate Case No. 2017-001224

———————

Appeal From Jasper County
Perry M. Buckner, III, Circuit Court Judge

———————

Opinion No. 5766
Submitted November 1, 2019 – Filed August 19, 2020

———————

**AFFIRMED**

———————

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General W. Jeffrey Young, Deputy Attorney
General Donald J. Zelenka, Senior Assistant Deputy
Attorney General Melody Jane Brown, Assistant
Attorney General William Joseph Maye, all of Columbia;
and Solicitor Isaac McDuffie Stone, III, of Bluffton, all
for Respondent.

———————

**WILLIAMS, J.:** In this criminal appeal, Rohaime Jamar Hopkins appeals his
conviction for murder. On appeal, Hopkins argues the trial court erred in (1)
admitting State's Exhibits 7 and 8 (the Cell Phone Records), (2) admitting State's

Exhibit 9 (the Text Message), and (3) allowing Michael Taylor's testimony. We affirm.

**FACTS/PROCEDURAL HISTORY**

On November 12, 2014, Terrance Johnson (Victim) was shot and killed in Jasper County. Hopkins was indicted for Victim's murder and tried by a jury. The State's theory was that Victim was murdered at approximately 9:37 P.M.

Several witnesses saw Hopkins and Victim leave a wake together on the night of the murder, and one witness testified that during the wake, she saw Hopkins with a gun tucked into his pants. Lieutenant Shaun Harley, a supervisor with the South Carolina Law Enforcement Division (SLED), testified Latanya Singleton told him that on the night of the murder (1) Hopkins and Victim came to her house, (2) Hopkins and Victim left her house in Victim's car, and (3) approximately twenty minutes later, Hopkins walked back to her house alone before being picked up by someone.[1] Agent Richard Johnson, a SLED investigator, testified Latanya lived approximately five hundred yards from where Victim's body was found.

Hopkins's written statement to police indicated he saw Victim at the wake and Victim took him to get clothes. After Victim dropped him off at Janeika DuPont's house around 6:30 or 7:00 P.M., he did not see or speak to Victim anymore that day. DuPont testified that Hopkins was not at her house at 6:30 or 7:00 P.M. but he arrived at 10:30 or 11:00 P.M.

On the first day of trial, Michael Taylor, DuPont's husband, informed the State he was going to testify that when Hopkins arrived at their house on the night of the murder, he changed his clothing and proceeded to burn the clothing in a burn barrel. Upon learning this information, the State immediately informed Hopkins and the trial court. During the trial, Taylor testified that on the night of the murder, he returned home at approximately 9:07 P.M. and Hopkins was not there. He stated he went next door until approximately 10:15 or 10:30 P.M. and when he returned home, Hopkins was unexpectedly inside. Taylor testified that after he and Hopkins talked for a while, Hopkins changed his clothes and burned them in Taylor's burn barrel. Hopkins objected to this testimony because it was not previously provided to him. A discussion was held off the record, and the trial court indicated it would state its ruling on the objection on the record later. When the trial resumed, Taylor

---

[1] At trial, Latanya testified she did not remember telling Lieutenant Harley any of the aforementioned information because she was high when she spoke to him.

stated that when he spoke to police in 2014, he did not think to mention that Hopkins burned his clothing because he did not believe Hopkins killed Victim. It was only when Taylor was asked to testify at trial that he began to consider Hopkins's specific actions on the night of the murder. The trial court overruled Hopkins's objection to Taylor's testimony. The court noted (1) the State informed Hopkins about Taylor's statement as soon as it became aware of it and (2) because witnesses often change their testimony or give surprise testimony, Hopkins only objected to Taylor's testimony to evoke sympathy from the jury about the amount of notice he received.

At trial, there was evidence presented that a drug dealer put "a hit" on Victim. Agent Johnson testified Daytron Simmons (Simmons) told him that (1) approximately two weeks before the murder, Hopkins was looking at Victim when Hopkins told Simmons he was waiting on the drug dealer to sign "the contract" and (2) Hopkins told Simmons the drug dealer put a hit on Victim because Victim was "snitching."[2] Antoine Drake testified there was a hit out on Victim and he attempted to collect the hit money for killing Victim in an effort to scam the drug dealer and find out if Hopkins killed Victim. However, Drake clarified he was not paid because the drug dealer said "Hopkins told me he did it alone" and Hopkins had already been paid. Byron Singleton testified he and Hopkins were "basically roommates" in jail and Hopkins told him that he killed Victim because the drug dealer offered him $15,000 to kill Victim in a murder for hire.[3] Angel Simmons (Angel), Victim's fiancé, testified she called Victim several times on the night of the murder and Victim answered her two calls close to 10:00 P.M. She stated the last time Victim answered her call, she asked where he was a couple of times and told him she loved him. Angel heard a little scuffle and the phone call abruptly ended. Angel stated she kept calling Victim's phone but it went straight to voicemail.

State's Exhibit 7 was a portion of Victim's cell phone record, and State's Exhibit 8 was a portion of Hopkins's cell phone record (collectively, the Cell Phone

---

[2] At trial, Simmons testified he has trouble with his long-term memory because he was shot in the eye in 2006, so he did not remember saying these things or speaking with Agent Johnson on March 24, 2015.
[3] Singleton previously met Drake on a prison bus ride, but he denied receiving information about Victim's murder from Drake. At the time of trial, Singleton had a pending murder charge. He admitted he hoped he would receive leniency for testifying but agreed there was no agreement with the Solicitor.

Records), both from the night of the murder.[4]  Each record listed the phone number associated with the record, its corresponding outgoing and incoming calls and text messages, the time and duration of those calls, whether the calls were forwarded to voicemail, and the cellphone tower and sector that connected the communication. State's Exhibit 9 was the record of a text message (the Text Message) sent from Hopkins's old cell phone number, which stated, "Dats done need to Holla at u."

During the direct examination of Karen Milbrodt, a senior analyst in Executive Relations and a records custodian for Verizon Wireless, Hopkins made a general objection to the introduction of the Cell Phone Records and the Text Message.  A discussion was held off the record.  On the record, the trial court stated, "The State seeks to *admit a text message*," and the court noted Hopkins objected based on the Confrontation Clause and hearsay.  (emphasis added).  Hopkins conceded the authenticity of the Text Message.  The trial court overruled Hopkins's objection, finding the Text Message (1) did not violate the Confrontation Clause, (2) was not hearsay because it was an admission of a party opponent, (3) in the alternative, met the exception for hearsay as a statement against interest, (4) was relevant, and (5) was not unfairly prejudicial.  Following the court's ruling on Hopkins's hearsay objection, Hopkins reminded the court he had "a couple of other positions as far as why *that language* should not be admissible."[5]  (emphasis added).  Hopkins argued the language in the Text Message was confusing and not relevant because (1) the State could not tie the language in the Text Message to its argument that the Text Message meant Hopkins killed Victim and (2) the State could not prove to whom the Text Message was sent.[6]  The trial court conveyed that Hopkins's concerns related to a potential inference from the evidence, which would go to the weight rather than admissibility of the evidence and would be for the jury to determine. Hopkins then argued the prejudice outweighed the probative value under Rule 403, SCRE, because the State was going to use it to say Hopkins carried out a "hit" on Victim without any evidence to support that assertion.  The court stated the Text

---

[4] Angel testified the phone number associated with Exhibit 7 was Victim's phone number.  Agent Johnson testified Hopkins admitted the phone number associated with Exhibit 8 was his old phone number.

[5] Because the preceding discussion of Hopkins's objections only mentioned the Text Message, we find "that language" refers to the language in the Text Message.

[6] Hopkins argued the State would attempt to argue the Text Message was sent to the drug dealer.  The trial court agreed with Hopkins that there was no way to establish to whom the Text Message was sent because it was sent to a burner phone.

Message did not mention a "hit" and that any connection to the "hit" would be based upon an argument or an inference.

The next day, the court indicated it believed it only ruled on one exhibit, but the State clarified there were three exhibits. Hopkins agreed, and the Cell Phone Records and the Text Message were admitted into evidence. The court then turned to "a new issue" related to Hopkins's pretrial motion to exclude any testimony or evidence related to the cell phone sector analysis created by Dylan Hightower, an investigator for the State.[7] The State sought to qualify Milbrodt as an expert to lay a foundation for Hightower's cell phone sector analysis and proffered her qualifications outside of the presence of the jury. The court found Milbrodt was not qualified to provide expert testimony on the use of cell phone towers but she was qualified as a records custodian. Hopkins did not object.

Milbrodt recited from the Cell Phone Records when asked which phone tower a call in the Cell Phone Records utilized. Milbrodt stated that if the Cell Phone Records showed two identical time stamps for an incoming call that meant the call was unanswered and forwarded to voicemail. Milbrodt testified that on the night of the murder, Victim's cell phone record indicated there were two answered incoming phone calls at 9:33 P.M. and 9:34 P.M.[8] She stated that a third incoming phone call came in at 9:37 P.M., lasted twenty seconds, and utilized cell tower 216 and sector one alpha.[9] Milbrodt testified Victim's cell phone record indicated every call made to his cell phone from 9:38 P.M. until 1:53 A.M. was forwarded to voicemail. Milbrodt also testified Hopkins's cell phone records indicated there was an outgoing call at 9:37 P.M that utilized cell phone tower 216 and sector one alpha. Milbrodt further testified the Text Message record indicated it was sent from Hopkins's old cell phone number at 9:56 P.M. on the night of the murder. Hopkins did not object to any of the aforementioned testimony. When Hopkins asked Milbrodt whether a call would go to the next available towers if the usual tower was overloaded or not working, Milbrodt answered affirmatively; the State objected, and this objection was sustained.

---

[7] Neither the pretrial motions nor Hopkins's specific objection to the cell phone sector analysis are included in the record on appeal.

[8] Milbrodt noted the phone number that was associated with each Cell Phone Record, but she did not specifically refer to the Cell Phone Records or the Text Message as belonging to either Hopkins or Victim.

[9] This call was received from the number that Angel testified belonged to her.

Hopkins was convicted and sentenced to life imprisonment without the possibility of parole. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in admitting the Cell Phone Records?

II. Did the trial court err in admitting the Text Message?

III. Did the trial court err in allowing Taylor's testimony?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jenkins*, 412 S.C. 643, 650, 773 S.E.2d 906, 909 (2015). The decision to admit or exclude evidence is within the sound discretion of the circuit court. *State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009). An appellate court will not disturb the circuit court's admissibility determinations absent a prejudicial abuse of discretion. *State v. Adkins*, 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## LAW/ANALYSIS

### I.     The Cell Phone Records

Hopkins contends the trial court erred in admitting the Cell Phone Records, arguing (1) the Cell Phone Records were not statements against penal interest, (2) the Cell Phone Records were prejudicial under Rule 403, SCRE, and (3) the Cell Phone Records were confusing to the jury. We find these arguments are not preserved for our review.

"In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]. Issues not raised to and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003). "Unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review." *State v. Simpson*, 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996). "[T]o preserve for review an alleged error in admitting evidence[,] an objection should be sufficiently

specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge." *State v. Prioleau*, 345 S.C. 404, 411, 548 S.E.2d 213, 216 (2001). "The failure to raise specific grounds for an objection will not prevent the appellate court from addressing an issue when the record indicates that the trial court and the State understood the basis for the objection." *State v. Bowers*, 428 S.C. 21, 29, 832 S.E.2d 623, 627 (Ct. App. 2019). "[A] party may not argue one ground at trial and an alternate ground on appeal." *Prioleau*, 345 S.C. at 411, 548 S.E.2d at 216.

At trial, Hopkins's objections to the trial court solely pertained to the admission of the Text Message and to the separate sector analysis created by Hightower. He did not specifically object to the Cell Phone Records before they were admitted into evidence, and we find the trial court did not understand Hopkins's objection to additionally encompass the Cell Phone Records. *See id.* ("[T]o preserve for review an alleged error in admitting evidence[,] an objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge."); *Simpson*, 325 S.C. at 42, 479 S.E.2d at 60 ("Unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review."). Furthermore, Hopkins's objection to Milbrodt's testimony occurred after the Cell Phone Records were admitted into evidence and was related to the separate matter of her ability to lay a predicate for the sector analysis created by Hightower. Hopkins did not object when the trial court found Milbrodt could testify as to the Cell Phone Records as a records custodian. *See Prioleau*, 345 S.C. at 411, 548 S.E.2d at 216 ("[A] party may not argue one ground at trial and an alternate ground on appeal."). Accordingly, we find Hopkins's arguments regarding the Cell Phone Records are not preserved for our review.[10]

## II.     The Text Message

---

[10] It is not clear if Hopkins made specific objections to the Cell Phone Records during an off-the-record discussion, but even if he did, such an objection would be abandoned because it was not put on the record. *See York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997) ("An objection made during an off-the-record conference which is not made part of the record does not preserve the question for review.").

Hopkins argues the trial court erred in admitting the Text Message because it was confusing and its probative value was substantially outweighed by its unduly prejudicial effect under Rule 403, SCRE.[11]  We disagree.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 401, SCRE.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Rule 403, SCRE; *see also State v. Cheeseboro*, 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001).  "All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided."  *State v. Bratschi*, 413 S.C. 97, 115, 775 S.E.2d 39, 49 (Ct. App. 2015) (quoting *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998)).  "Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one."  *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001).  The burden is "on the opponent of the evidence to establish inadmissibility" under Rule 403.  *State v. King*, 424 S.C. 188, 200 n.6, 818 S.E.2d 204, 210 n.6 (2018).  "A trial [court's] decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances."  *State v. Sledge*, 428 S.C. 40, 55, 832 S.E.2d 633, 641–42 (Ct. App. 2019) (alteration in original) (quoting *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014)).  "Circumstantial evidence, . . . , is proof of a chain of facts and circumstances from which the existence of a separate fact may be inferred."  *State v. Rogers*, 405 S.C. 554, 563, 784 S.E.2d 265, 270 (Ct. App. 2013).

---

[11] Hopkins also contends the trial court erred in admitting the Text Message because it erroneously found the Text Message met the hearsay exception for a statement against penal interest.  However, that finding was an alternative sustaining ground to the trial court's finding that the Text Message was not hearsay because it was an admission of a party opponent pursuant to Rule 801(d)(2), SCRE.  Hopkins does not appeal that finding, and thus, it is the law of the case. *See State v. Fripp*, 396 S.C. 434, 441, 721 S.E.2d 465, 468 (Ct. App. 2012) (stating the appellant's failure to challenge the trial court's ruling in the appellate brief renders the unchallenged ruling the law of the case); *see also Anderson v. Short*, 323 S.C. 522, 525, 476 S.E.2d 474, 477 (1996) (holding that when the ruling of the trial court is based on more than one ground, the appellate court will affirm unless appellant appeals all the grounds).

Hopkins argues the Text Message was "so amorphous and so ambiguous and confusing" that it should have been excluded under Rule 403. In support of this argument, Hopkins avers that on its face, the Text Message did not support the State's argument that he sent the Text Message because he killed Victim and wanted to collect the money for completing the "hit." We disagree, and we find the Text Message provides circumstantial evidence of Hopkins's guilt. In *State v. Rogers*, this court pointed to the defendant's statement, "It's done," as circumstantial evidence of his guilt because the jury had to infer what he meant by the words "it" and "done" before it could determine whether he confessed to murder even though the circumstances in the case persuasively indicated the statement meant he killed the victim. *Id.* at 564, 748 S.E.2d at 270. Although that case dealt with whether there was enough circumstantial evidence to affirm the trial court's denial of the defendant's directed verdict motion rather than the admissibility of the statement, it shows such an inference could be drawn from the statement even though the statement on its face did not specify the defendant killed the victim. Likewise, we find the Text Message provides circumstantial evidence of Hopkins's guilt from which the jury could properly infer "Dats done need to Holla at u" meant Hopkins killed Victim and was seeking to collect money for the "hit." *See id.* at 563, 784 S.E.2d at 270 ("Circumstantial evidence, . . . , is proof of a chain of facts and circumstances from which the existence of a separate fact may be inferred."). This is especially true when considering evidence was admitted that indicated (1) Hopkins was hired to kill Victim, (2) multiple witnesses saw Hopkins with Victim shortly before the murder, (3) Hopkins's story differed from other witnesses's recall of his whereabouts on the night of the murder, (4) the Text Message was sent nineteen minutes after the State argued Victim was killed and within the time frame that Angel testified her call to Victim was disconnected, (5) Hopkins had a gun on the night of the murder, and (6) Hopkins burned his clothing on the night of the murder. Thus, we find the trial court did not err in admitting the Text Message.

As to Hopkins's unfair prejudice argument, based on the facts listed above, we find the danger of unfair prejudice from any inference or speculation the jury could draw from the Text Message is slight compared to its relevance and thus does not outweigh its probative value. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."); *Bratschi*, 413 S.C. at 115, 775 S.E.2d at 49 ("All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided." (quoting *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998))); *see also State v. Thompson*, 420 S.C. 286, 398–99, 803 S.E.2d 44, 50 (Ct. App. 2017) (finding the trial court did not

err in ruling the potential prejudicial value of a letter did not substantially outweigh its probative value even though the letter invited speculation).[12]

Based on the foregoing, we find the trial court did not err in admitting the Text Message.

### III.    Taylor's Testimony

Hopkins argues the trial court erred in failing to properly exercise its discretion to exclude Taylor's testimony that Hopkins burned his clothes in a barrel outside of Taylor's home on the night of the murder.  Specifically, Hopkins contends the admission of this evidence on the first day of trial, without sufficient notice, amounted to "trial by ambush."  We disagree.

Rule 5(a)(2), SCRCrimP, does not authorize the discovery of

> statements made by prosecution witnesses or prospective prosecution witnesses provided that after a prosecution witness has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified; and provided further that the court may upon a sufficient showing require the production of any statement of any prospective witness prior to the time such witness testifies.

Rule 5(c), SCRCrimP provides that "[i]f, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material."

---

[12] Hopkins also argues the Text Message did not pinpoint him as its sender. However, before the trial court, Hopkins solely argued the State could not prove to whom he sent the Text Message.  Thus, we find this argument is unpreserved because it was not raised to the trial court.  *See Prioleau*, 345 S.C. at 411, 548 S.E.2d at 216 ("[A] party may not argue one ground at trial and an alternate ground on appeal."); *Simpson*, 325 S.C. at 42, 479 S.E.2d at 60 ("Unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review.").

On appeal, Hopkins admits that "it is undisputed that [Taylor] chose to claim [Hopkins] burned his clothes in a barrel at Taylor's house for the first time at trial" and further acknowledges that the State notified him the same day.  The trial court also specifically noted that Hopkins got the same notice of the content of Taylor's testimony as the State because the State informed him immediately after it found out Taylor was going to testify to such.  Thus, even though Taylor revealed this information for the first time on the first day of the trial, we find there was no violation of Rule 5 because the State provided Hopkins with immediate notice of the information when it learned of it.

Hopkins argues that even if there was a timely disclosure under Rule 5(c), the evidentiary analysis was not complete because the trial court had the inherent duty to ensure he received a fair trial and not a trial by ambush.  We find *Sheppard v. State* instructive due to its examination of the timing of the disclosure of witness statements.  357 S.C. 646, 657–60, 594 S.E.2d 462, 469 (2004), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 832 S.E.2d 575 (2019).  In *Sheppard*, the defense was not provided with two prior statements of a State's witness until after the State concluded its direct examination of the witness.[13] *Id.* at 657, 594 S.E.2d 462, 469 (2004).  Our supreme court found that because the petitioner "was given [the witness's] statements in time for cross-examination, there [was] not a reasonable probability the outcome of the trial would have been different had the statements been disclosed prior to trial." *Id*. at 660, 594 S.E.2d at 470; s*ee also State v. Grantham*, 224 S.C. 41, 45, 77 S.E.2d 291, 293 (1953) (finding that the appellant was not denied a fair trial when a police officer testified the appellant told him he planned the homicide for a long time but the officer did not mention that statement in his testimony at a previous coroner's inquest because the appellant was able to cross-examine the officer about why he did not testify earlier as to the appellant's statement). Although *Sheppard* and *Grantham* did not specifically identify and analyze the issue as one of fundamental fairness, the results of *Sheppard* and *Grantham* suggest that fundamental fairness was not violated in this case because Hopkins was able to cross-examine Taylor about why he did not

---

[13] The witness testified at trial that (1) the petitioner admitted an officer was chasing him and told him to freeze, (2) the petitioner froze but stated, "Man, I can't go to jail," and (3) the petitioner made a motion to indicate that he shot the officer. 357 S.C. at 658, 594 S.E.2d at 469.  Following the police officer's murder, the witness made two statements to the police.  *Id*.  In the first statement, he did not make the assertions he testified to regarding the killing, but after his attorney told him it would benefit him to cooperate, he made another statement that correlated with his trial testimony.  *Id*. at 658–59, 594 S.E.2d at 469.

previously mention the burning of the clothing. Thus, we find the trial court did not abuse its discretion in allowing Taylor's testimony. *See Adkins*, 353 S.C. at 326, 577 S.E.2d at 468 (stating an appellate court will not disturb the circuit court's admissibility determinations absent a prejudicial abuse of discretion).[14]

**CONCLUSION**

Based on the foregoing, Hopkins's conviction is

**AFFIRMED.**[15]

**HUFF and MCDONALD, JJ., concur.**

---

[14] Hopkins also argues that "it appears at some point Taylor decided he believed [Hopkins] was guilty, and that this 'burned his clothes' assertion would sway the jury to believe that [Hopkins] was guilty also." However, we find no evidence in the record to support this assertion, and "bias or other defects in a witness's testimony—revealed primarily through cross-examination—affect a witness's credibility and may be weighed by the finder of fact." *State v. King*, 367 S.C. 131, 137, 623 S.E.2d 865, 868 (Ct. App. 2005).

[15] We decide this case without oral argument pursuant to Rule 215, SCACR.