# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jaquwn Brewer, Appellant.

Appellate Case No. 2012-208487

Appeal from Beaufort County
William H. Seals, Jr., Circuit Court Judge

Opinion No. 27487
Heard April 1, 2014 – Filed January 28, 2015

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

James A. Brown, Jr., of Beaufort, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy
Attorney General John W. McIntosh, and Senior
Assistant Deputy Attorney General Donald J. Zelenka, all
of Columbia, and Solicitor Isaac McDuffie Stone, III, of
Bluffton, Respondent.

**JUSTICE KITTREDGE:** Appellant Jaquwn Brewer was convicted of multiple charges in connection with the shooting of two individuals at a nightclub. This direct appeal concerns the admission of Brewer's unredacted audiotaped interrogation by the police. The admission of Brewer's interrogation was error. We nevertheless affirm Brewer's convictions for assault and battery with intent to

kill and possession of a weapon during the commission of a violent crime, for the error was harmless with respect to these charges. We reverse the murder conviction and remand for a new trial.

## I.

On May 23, 2009, a large group of people gathered at the Semper Fi Club (the Club) in Beaufort County, South Carolina, for a party. After midnight, as the party continued, law enforcement officers responded to a shooting at the Club. Two individuals were shot, one fatally. The investigation revealed that the first shooting occurred inside the Club and the second shooting occurred moments later in the Club parking lot.

## A.
## The First Shooting

Brewer and several of his companions were posing for photographs inside the Club. The photographer, Gary Bright, and several other attendees noticed that Brewer was posing with a handgun. A photograph introduced at trial confirmed that Brewer had a handgun in the front waistband of his pants. One of the organizers of the party, Deon Stevenson, was alerted, and he asked Brewer to take the gun out of the Club. Brewer responded by pulling out the handgun and pointing it at Stevenson's head, which others in the Club witnessed.

Immediately thereafter, Brewer shot his gun inside the Club, hitting Donald Parker, who was standing near the photo booth. There were numerous witnesses to the shooting of Parker. Parker survived the shooting. Brewer was charged with assault and battery with intent to kill and possession of a weapon during the commission of a violent crime as a result of shooting Parker.

## B.
## The Second Shooting

Patrons, including Brewer, fled the Club after the first shooting. Moments later, more shots were fired outside the Club in the parking lot by at least two individuals, including Brewer and Dominique Middleton. Henry Jones was standing in the entrance to the Club dialing 911 when a stray shot from the parking lot struck and killed him. Brewer was charged with murder for the killing of Jones.

# C.
## The Investigation

Law enforcement recovered numerous shell casings.  One was found on the floor inside the Club, one directly outside the exit, one near the road, and eight on the left side of the parking lot next to a red laser sight.  The investigation revealed that the laser sight was part of Middleton's gun.  Trace metals and gunshot residue were found on the pants Brewer was wearing.  The physical evidence showed that the bullets recovered from the victims were likely fired from a .45 caliber, semi-automatic handgun.  However, a comparison of the bullets was inconclusive, and the SLED firearms examiner could not determine whether the bullets were fired from the same handgun.  Despite learning from many witnesses that there were at least two shooters in the Club parking lot, investigators pursued Brewer as the only suspect.[1]

In an interview at the Beaufort County Sheriff's Office, Brewer waived his *Miranda*[2] rights and agreed to speak with investigators.  The recording of this interview, including the interrogators' hearsay-laden questions and comments, was played for the jury.  The investigators informed Brewer that many witnesses observed him shoot both victims, which was true only with respect to the shooting of Parker inside the Club.  Brewer denied involvement in either shooting, and approximately twenty minutes into the interview, Brewer told investigators that he wanted to end the interrogation.  Yet the interrogation continued.[3]  The investigators employed various tactics to extend the interrogation, including bringing Brewer's mother into the room and repeatedly telling Brewer that he should "prove himself innocent" by turning in his handgun, all of which was audiotaped and played to the jury, over Brewer's objection.

---

[1] Investigators claimed they attempted to locate Middleton but were unsuccessful and quickly abandoned their efforts.  Middleton was never charged in connection with the shootings.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]  The impropriety of law enforcement continuing a custodial interrogation following the accused's exercise of his right to terminate the interrogation is not before us.

We believe it is helpful to examine a sampling of the interrogation. Early on, Brewer stated multiple times he was "ready to go." Brewer reminded the officers that they said he could stop the questioning at any time. When Brewer continued to ask that the interrogation stop, an investigator answered, "No." Brewer finally stated, "Man, I don't wanna talk no more." The investigator responded that if Brewer were innocent, he could prove his innocence by producing his gun. The interrogation's mantra of demanding Brewer prove his innocence continued unabated,[4] even after Brewer repeatedly said, "I can't say no more."

Brewer moved, on the basis of hearsay, to have the investigators' statements redacted from the audiotaped recording of his interrogation. The trial court denied Brewer's request. Brewer was convicted on all charges. We certified his direct appeal to this Court pursuant to Rule 204(b), SCACR.

## II.

"'The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion.'" *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012) (quoting *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001)). Here, the admission of the unredacted audiotaped interrogation was an abuse of discretion.

## A.

We acknowledge the propriety of law enforcement interrogation techniques, including misrepresenting the existence and strength of the evidence against an

---

[4] Examples include statements to the effect that, "If you didn't do anything, that gun will prove it," and "If that is not the gun that shot somebody, then we can prove it," as well as "If you didn't do anything, you should have that gun. This is it. Prove it. You can prove your innocence." Officers also stated, "Proving yourself innocent should be, you know, that would be my first priority," and "If you didn't shoot, that gun will prove it. That gun will absolutely, positively . . . I'm saying that gun will prove you are absolutely innocent," along with "Help me prove you innocent," and "You're the only one here that—and you just absolutely don't want to prove yourself innocent." The final statement by an investigator was, "The point of my story is you can help yourself. Why don't you?" As noted, Brewer's objection to this evidence was overruled.

accused, as well as asking the accused to produce evidence voluntarily. *See State v. Von Dohlen*, 322 S.C. 234, 244, 471 S.E.2d 689, 695 (1996) ("Both this Court and the United States Supreme Court have recognized that misrepresentations of evidence by police, although a relevant factor, do not render an otherwise voluntary confession inadmissible." (citations omitted)). Such matters are typically examined *in camera* when the trial court is making a preliminary determination as to the admission of a confession. *See Jackson v. Denno*, 378 U.S. 368, 380 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined."). But such evidence will rarely be proper for a jury's consideration.

During the interrogation, investigators frequently referenced *and quoted* many purported eyewitnesses to Brewer shooting both victims. This evidence was hearsay, offered for the sole purpose of proving the truth of the matter asserted, establishing Brewer's guilt to all charges. *See State v. Jennings*, 394 S.C. 473, 478, 716 S.E.2d 91, 93 (2011) ("Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" (quoting Rule 801(c), SCRE)). The suggestion that this evidence served a nonhearsay purpose is patently without merit. *See Ezell v. State*, 345 S.C. 312, 315, 548 S.E.2d 852, 853 (2001) (finding out-of-court statements on an audiotape identifying the defendant as a drug dealer were inadmissible hearsay); *see also Windhom v. State*, 729 S.E.2d 25, 29 (Ga. Ct. App. 2012) (holding that an officer's statement during an interrogation that the victim believed that Appellant had acted in concert with other criminals was inadmissible hearsay); *Smith v. State*, 721 N.E.2d 213, 216 (Ind. 1999) (rejecting the State's argument that during an interrogation police questions and comments designed to elicit responses from the defendant constituted nonhearsay).

Indeed, we find no support in the law for the State's argument that the interrogators' statements were admissible for purposes of context or for the effect the statements had on Brewer. *See United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("So to what issue *other* than truth might the testimony have been relevant? . . . Allowing agents to narrate the course of their investigations, and thus spread before juries *damning information* that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the [S]ixth [A]mendment and the hearsay rule." (second emphasis added)). The only effect these statements had on Brewer was to make him repeatedly deny shooting anyone. The meaning of these repeated denials is obvious and requires no explanatory

context. The effort by the State to rescue the admission of this unmistakable hearsay must be rejected.

We emphasize that today's decision is not a categorical rule that any statement by an investigator during an interrogation is inadmissible at trial. As recognized by the North Carolina Court of Appeals, however, caution must be exercised in the admission of such evidence to ensure that all out-of-court statements are either "admissible for a valid nonhearsay purpose or as an exception to the hearsay rule in order to safeguard against an end-run around the evidentiary and constitutional proscriptions against the admission of hearsay." *State v. Miller*, 676 S.E.2d 546, 556 (N.C. Ct. App. 2009). To that end, "we would like to remind trial courts that the questions police pose during suspect interviews may contain false accusations, inherently unreliable, unconfirmed or false statements, and inflammatory remarks that constitute legitimate points of inquiry during a police investigation, but that would otherwise be inadmissible in open court." *Id*. (noting "the wholesale publication of a recording of a police interview to the jury, especially law enforcement's *investigatory questions*, might very well violate the proscriptions against admitting hearsay or Rule 403" and cautioning trial courts to be vigilant in redacting and excluding problematic portions of law enforcement's investigatory questions (emphasis added)).

Beyond the hearsay error, we wish to briefly comment on the grave constitutional error in the admission of the challenged evidence in this case. Law enforcement's *ad nauseam* insistence that Brewer prove his innocence has *no* place before the jury. It is chilling that we have to remind the State that an accused is presumed innocent and that the State has the burden to prove guilt beyond a reasonable doubt. *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); *Sandstrom v. Montana*, 442 U.S. 510, 512 (1979) (noting that the Fourteenth Amendment requires that "the State prove every element of a criminal offense beyond a reasonable doubt").

We now turn to the State's alternative argument that any error was harmless in view of the overwhelming evidence of Brewer's guilt.

## B.

The "[i]mproper admission of hearsay testimony constitutes reversible error only when the admission causes prejudice." *Jennings*, 394 S.C. at 478, 716 S.E.2d at 93 (citing *State v. Garner*, 389 S.C. 61, 67, 697 S.E.2d 615, 618 (Ct. App. 2010)).

"Such error is deemed harmless when it could not have reasonably affected the result of trial, and an appellate court will not set aside a conviction for such insubstantial errors." *Id*. "Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). For example, "[i]mproperly admitted hearsay which is merely cumulative to other evidence may be viewed as harmless." *Jennings*, 394 S.C. at 478, 716 S.E.2d at 93–94 (citing *State v. Blackburn*, 271 S.C. 324, 329, 247 S.E.2d 334, 337 (1978)). A careful review of the evidence convinces us the error was harmless in connection with the first shooting inside the Club, but not harmless concerning the second shooting in the parking lot of the Club.

The evidence of Brewer's guilt is overwhelming as to the shooting of Parker inside the Club. The State introduced a photograph showing the gun in Brewer's waistband. Corroboration is found in the testimony of the many witnesses who were inside the Club. For example, Bright, the photographer, saw Brewer draw his weapon and point it at Stevenson, one of the organizers of the party. Immediately thereafter, Bright heard gunshots. Several witnesses saw Brewer shooting inside the Club, all of whom testified and were subject to cross-examination. By all accounts, there was only one shooter inside the Club—Brewer. Accordingly, we find that the error in the admission of the interrogators' statements was harmless beyond a reasonable doubt as it relates to the assault and battery with intent to kill and weapon charges. *See Mitchell*, 286 S.C. at 573, 336 S.E.2d at 151 ("Error is harmless when it 'could not reasonably have affected the result of the trial.'" (quoting *State v. Key*, 256 S.C. 90, 93, 180 S.E.2d 888, 890 (1971))); *State v. Johnson*, 298 S.C. 496, 499, 381 S.E.2d 732, 733 (1989) ("The admission of improper evidence is harmless where it is merely cumulative to other evidence." (citing *Blackburn*, 271 S.C. at 329, 247 S.E.2d at 337)).

The evidence regarding the second shooting stands in stark contrast, providing at best only a thin, circumstantial case against Brewer for Jones's murder. The shot that killed Jones came from the parking lot where Brewer and Middleton were both shooting their guns. Despite acknowledging that Middleton was shooting a handgun with a laser sight in the parking lot and that eight shell casings were recovered next to the laser sight,[5] the lead investigator testified that he "didn't

---

[5] Those shell casings were never tested for evidentiary value or sent to SLED for analysis.

identify any other suspects" aside from Brewer.  Given the presence of at least two shooters in the parking lot, and the lack of direct evidence pointing conclusively to Brewer as the one who fired the fatal shot, we hold that the admission of the challenged statements cannot be deemed harmless.

## III.

We hold it was error to admit the challenged statements.  We conclude, however, that the error was harmless as it relates to the assault and battery with intent to kill and gun charges.  Regarding the murder charge, we reverse and remand for a new trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**TOAL, C.J., and HEARN, J., concur.  PLEICONES, J., dissenting in a separate opinion.  BEATTY, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE PLEICONES:** I respectfully dissent and would affirm both of appellant's convictions. I emphasize that my dissent is confined to the sole issue raised by appellant in his brief, which alleges error in the trial court's admission of certain hearsay statements.

In brief, appellant contends that the trial judge erred in admitting eight statements made by the detective during the course of appellant's more than hour long interrogation.[6] Appellant contends, and I agree, that these

---

[6] These are the eight statements, including the time during the interrogation at which they were made, as reproduced in appellant's brief:

| | |
|---|---|
| 4:00-4:30 | "Word is you have been identified as somebody who did some shooting yesterday." …. "There's a bunch of people identified you…" …. |
| 5:25-5:39 | "When we was at the Shriner's club on May 24, [witness name] and my boyfriend [unknown name] was about to take a picture and he [Appellant] was already taking his picture with his gun up and we asked him what he was doing with it in there and he pointed it at us and he pointed it and he just started shooting everywhere." (Investigator Fraser purportedly reading a statement provided by a witness.) |
| 6:06-6:10 | "There's a lot people that saw you do it." |
| 7:11-7:21 | "Well there's too many people that saw you shoot it. … Everybody's saying the same thing. They confronted you about having the gun in that picture and you started shooting." |
| 9:58-10:13 | "I've got statements from people that identify you as the shooter by name. … They called your name…They wrote it in the statements, straight up." |

statements should have been excluded since they contain inadmissible hearsay. The vast majority of the eight objectionable statements relate to what the majority refers to as "The First Shooting," and I agree with the majority that the erroneous admission of these statements was harmless in light of the overwhelming evidence of appellant's criminal responsibility for the shooting of Donald Parker.

It appears the only portion of the eight passages that specifically relate to the Second Shooting, which occurred outside the club, is found in the last statement. That statement begins, "They're saying you came out of the club shooting. … They're saying you were shooting in the air. That's what they are saying. That's exactly what they are saying you did." The remainder of this statement relates back to the Parker shooting. In my opinion, while this statement should have been excluded, its admission was harmless since it only accused appellant of shooting in the air once he left the club, and there is no question that he did fire his gun in the parking lot.

---

12:04-12:08 "But people saw you. They know you. They called your name."

49:29 "All I have to go on is what the witnesses there said. That's it. I've got you with the gun. I've got them saying you are the one that shot.

53:10-55:18 "They're saying you came out of the club shooting. … They're saying you were shooting in the air. That's what they are saying. That's exactly what they are saying you did. … They're saying they confronted you. They are like 'What are you doing with the gun.' That's when you pulled out the gun and started shooting. … That's exactly what they are saying. … That's what they are saying. … You're thinking that there's only one person saying you did it. There's a bunch of people; they were there, they saw you and they called your name … They saw you with the gun."

Appellant seeks reversal solely on the basis of the trial court's refusal to strike these eight statements from evidence. While I agree these statements were inadmissible hearsay, I would affirm both of appellant's convictions as I find the appellant failed to establish prejudice warranting reversal. *State v. Brockmeyer*, 406 S.C. 324, 751 S.E.2d 645 (2013).

**JUSTICE BEATTY:**  I concur in part and dissent in part.  I agree that admission of Brewer's interrogation was error.  I also agree that the murder conviction should be reversed as a result of this error.  However, I depart from the majority's conclusion that admission of the interrogation was harmless as it relates to the charges of ABWIK and possession of a firearm during the commission of a violent crime.

But for the solicitor's numerous instances of burden shifting, via the interrogation tape, I would agree that the error was harmless as to the latter charges.  However, the jury was repeatedly bombarded with the unconstitutional notion that Brewer had to prove that he was innocent.  In my view, this created a due process structural defect in the trial.  Structural defects are not subject to a harmless-error analysis regardless of the evidence presented.  *See State v. Rivera*, 402 S.C. 225, 247, 741 S.E.2d 694, 705 (2013) ("[D]espite the strong interests upon which the harmless-error doctrine is based, there are certain constitutional rights which are so basic to a fair trial that their infraction can never be treated as harmless error.  These are structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards and which affect the framework within which the trial proceeds, rather than simply an error in the trial process itself." (internal quotations omitted) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306-08 (1991)).  Accordingly, I would reverse all of Brewer's convictions and remand for a new trial.