804 S.E.2d 301

The STATE, Respondent,

v.

Trenton Malik BARNES, Appellant.

Appellate Case No. 2014-002771
Opinion No. 5509

Court of Appeals of South Carolina.

Heard April 17, 2017
Filed August 16, 2017

See also 2017 WL 3044752

48

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Susannah Rawl Cole, and Solicitor Daniel Edward Johnson, all of Columbia, for Respondent.

HILL, J:

After a joint trial, Trenton Barnes and Lorenzo Young were convicted by a jury of murder, kidnapping, second-degree burglary, and attempted armed robbery. We set forth the relevant facts in *State v. Young*, Op. No. 5501, 420 S.C. 608, 803 S.E.2d 888, 2017 WL 3044752 (S.C. Ct. App. filed July 19, 2017) (Shearhouse Adv. Sh. No. 27 at 96–101). On appeal, Barnes argues the trial court erred in (1) denying his motions for severance; (2) admitting the testimony of two jailhouse informants as statements against interest under Rule 804(b)(3), SCRE; and (3) allowing the State to improperly impeach the testimony of his mother, Latoya Barnes. We affirm.

## I.

Barnes first contends the trial court abused its discretion in denying his motion to sever his trial from Young's. Denial of a severance motion is an abuse of discretion if unsupported by the evidence or controlled by an error of law. *State v. Spears*, 393 S.C. 466, 475, 713 S.E.2d 324, 328 (Ct. App. 2011).

Codefendants in a murder case are not automatically entitled to separate trials. *State v. Kelsey*, 331 S.C. 50, 73, 502 S.E.2d 63, 75 (1998). They are entitled to a severance "only when there is a serious risk that a joint trial would compromise a specific trial right of a codefendant or prevent the jury from making a reliable judgment about a codefendant's guilt." *State v. Dennis*, 337 S.C. 275, 282, 523 S.E.2d 173, 176 (1999). *See also Hughes v. State*, 346 S.C. 554, 559, 552 S.E.2d 315,

317 (2001); *see also Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("[I]t is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."). We will only reverse the denial of a severance motion when it is reasonably probable the defendant would have received a more favorable outcome had he been tried separately. *Hughes*, 346 S.C. at 559, 552 S.E.2d at 317.

Barnes argues being tried with Young compromised his right to effectively cross-examine Young's girlfriend, Rolanda Coleman. Barnes believes Coleman was a key witness whose credibility was central, as she identified him as the gunman in the gray sweatshirt on the surveillance video, and also testified she had seen him with a gun on another occasion. Barnes claims in a separate trial he would have been able to elicit that Coleman and Young were codefendants in an unrelated pending burglary charge. Barnes believes this would have allowed him to better portray to the jury that Coleman's testimony lacked credibility because she was seeking to protect Young, with whom she shares two children.

The record reveals the trial court only prohibited Barnes from telling the jury Young was charged in the pending burglary case, presumably because to do so would have introduced improper evidence of Young's character and prior bad acts, transgressing Rule 404, SCRE. Nothing stopped Barnes from confronting Coleman about her bias in favor of Young based on their relationship or her willingness to testify in hopes of reducing her exposure to substantial prison time on the burglary charge. In fact, these areas were explored during her testimony. Being tried with Young did not hamper Barnes' right to cross-examine Coleman effectively; consequently, no prejudice accrued to him. Moreover, we do not believe exclusion of this singular point of impeachment prevented the jury from making a reliable judgment about Barnes' guilt. *See Dennis*, 337 S.C. at 282, 523 S.E.2d at 176. Coleman's testimony was cumulative to other evidence, including Barnes' letter to his mother and his mother's identification of him in the video.

Barnes also claims the joint trial prevented him from cross-examining Young about the statements he made to Alfred D.

Wright and Michael Schaefer identifying "Trigg" and "Trap" as his accomplices. Because Young did not take the stand, Barnes maintains he could not confront Young and consequently *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), required Barnes be granted a separate trial.

This is a closer issue. As we noted in *Young*, the State's decision to try Barnes and Young together was fraught with risk. It also placed the trial court in difficult positions throughout the almost three week trial. Yet, as we concluded in *Young's* appeal, the trial was fundamentally fair and we can confidently say the jury was not prevented from making a reliable judgment about Barnes' guilt. As more fully explained in Section II, *infra*, the evidence of Barnes' guilt was overwhelming. The probability Barnes would have fared better in a separate trial is remote. Accordingly, even if the denial of severance compromised Barnes' right to confront Young, the error was harmless. *See State v. McDonald*, 412 S.C. 133, 142, 771 S.E.2d 840, 844 (2015) ("In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." (quoting *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972))).

## II.

Barnes next argues the trial court erred in admitting the testimony of Wright and Schaefer under the hearsay exception for statements against penal interest, Rule 804(b)(3), SCRE. We agree.

In criminal cases, an appellate court reviews only errors of law. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). The admission of evidence is within the discretion of the trial court, and we may only check that discretion if it is abused. *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001). An abuse of discretion occurs when the decision of the trial court is controlled by an error of law or lacks evidentiary

54

support. *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

 Over Barnes' objections, Wright testified in part:

Q: .... What did [Young] tell you about his case?

[WRIGHT]: That he was with two other individuals that he called Trigg and Trap, and I later got their names from somebody else, but not from him. He just gave me their nicknames. He said they went to rob a club, but the club was closed, so they went next door to a bakery where Trap stayed outside as a look out and he and Trigg went in. A woman resisted when they demanded for money and swung a knife at them, and he shot her two times.

Q: And backing up just a little bit, you said he mentioned that he did this with two other individuals?

A: Right.

Q: Did you learn who Trigg was?

A: I was told by someone else, not him, that Trigg was Troy Stevenson and Trap was Trenton Barnes and they were both brothers.

Schaefer later took the stand and provided the following:

Q: Just go ahead and tell the jury what Mr. Young told you.

[SCHAEFER]: Okay, he said him and two other people by the name of Trap and Trigg went out to rob a nightclub in the area, but it was closed. They saw the bakery was opened. They took that as an opportunity to go in. The woman was in there. He said she went for a knife and she was struggling so [he] shot her twice. He fled the scene. He said he was wearing a red hoodie and jeans.

. . .

Q: And you just mentioned Trap and Trigg. Did you know who those individuals were?

[SCHAEFER]: No, it wasn't until later on. I just knew them by their nicknames

Q: And did you determine later who Trap and Trigg were?

A: Yeah.

Q: Who was Trap?

A: A 16-year-old kid named Troy. Yeah, Troy.

Q: A 16-year-old?

A: Yes.

Q: Did you understand who Trigg was?

A: That's Trenton, Trenton Stevens (sic).

*Williamson v. United States*, 512 U.S. 594, 600–01, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), is the starting point for considering admissibility of statements against penal interest:

> In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

Our supreme court adopted the *Williamson* approach in *State v. Fuller*, 337 S.C. 236, 244–45, 523 S.E.2d 168, 172 (1999). We interpret the rule allowing statements against penal interest stringently. *Fuller* emphasized the "strict requirements" of the rule. *Id.* at 245, 523 S.E.2d at 172. *State v. Holmes* reaffirmed *Fuller* and stressed the rule is to be applied "very narrowly to only those portions of a hearsay statement which are plainly self-inculpatory." 342 S.C. 113, 117, 536 S.E.2d 671, 673 (2000). *See generally Weinstein's Federal Evidence* 804-64 (2d ed. 2017) ("[A] statement which shifts a greater share of the blame to another person (self-serving) or which simply adds the name of a partner in crime (neutral) should be excluded even when closely connected to a statement that assigns criminality to the declarant."); *McCormick on Evidence* 533 (7th ed. 2013) ("The result is that only the specific parts of the narrative that inculpate qualify.").

▮▮▮▮ Rule 804(b)(3), SCRE, requires the trial judge to view the disputed evidence in light of the surrounding circumstances and discern whether each particular remark is plainly self-inculpatory. This entails a searching examination of both content and context. The portions of Wright and Schaefer's testimony that relate Young's mention of "Trigg" and "Trap" as his accomplices were not admissible as statements against Young's interest. To be sure, "a statement is not *per se* inadmissible simply because the declarant names another person." *Fuller*, 337 S.C. at 245, 523 S.E.2d at 172. Nevertheless,

we have never found a statement in which a declarant implicates—rather than merely names—another admissible under Rule 804(b)(3). The rule only grants admission of statements against the declarant's penal interest. Statements that are against the penal interest of an accomplice do not qualify for the simple fact that the accomplice is not the declarant.

We find the trial court erred in admitting this testimony. The portions of the testimony that did not plainly inculpate Young were rank hearsay inadmissible against Barnes.[1]

However, the improper admission of hearsay is harmless when it could not have reasonably affected the result. *State v. Brewer*, 411 S.C. 401, 408–09, 768 S.E.2d 656, 660 (2015). "No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). Even if Wright and Schaefer's testimony had been limited to Young's self-inculpatory statements, the State overwhelmingly proved Barnes was one of the people who entered the kitchen and shot at Victim.[2] This evidence includes, most compellingly, Barnes' letter to his mother confessing to the crime; his mother's identification of him as the person wearing the gray sweatshirt in the surveillance video; and the timeline of Barnes' whereabouts on the night of the shooting. Accordingly, the error in admitting hearsay against Barnes through Wright and Schaefer's testimony was harmless beyond a reasonable doubt. *See State v. Prioleau*, 345 S.C. 404, 406–411, 548 S.E.2d 213, 214–16 (2001) (finding admission of hearsay statement by possible accomplice was harmless in light of victims' photographic and in-court identification of their assailant).

---

1. Although not an issue before us, it is unclear how Wright and Schaefer's testimony concerning how they learned the identities of "Trigg" and "Trap" complied with Rule 602, SCRE.

2. One of Barnes' best defenses may have been that he was the lookout standing outside the door of the kitchen and "merely present" when the crimes took place. Wright and Schaefer's testimony might have helped advance this defense, as they both placed Barnes outside, implicating Troy Stevenson as the man in the gray-hooded sweatshirt who went inside.

### III.

Finally, Barnes claims error in the manner the State was allowed to impeach the testimony of his mother, Latoya Barnes, with a prior inconsistent statement she had made to Investigator Matthew McCoy.

The State called Ms. Barnes as a witness on November 13, 2014, and questioned her about a recorded phone conversation with McCoy from August 2013. Ms. Barnes admitted the communication occurred, but flatly denied she had stated Barnes was the one in the surveillance video wearing the gray sweatshirt. For good measure, the State had Ms. Barnes reaffirm her denial at the end of her direct examination.

On November 17, the State called McCoy and, over Barnes' objection, published the portion of the August 2013 conversation when Ms. Barnes states her familiarity with her "kid's build" and identifies Barnes as the one wearing the gray sweatshirt in the video.

Rule 613(b), SCRE, states:

(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made, and is given the opportunity to explain or deny the statement. If a witness does not admit that he has made the prior inconsistent statement, extrinsic evidence of such statement is admissible.

Barnes maintains the State should have been forced to play the recorded conversation between Ms. Barnes and McCoy during Ms. Barnes' testimony. According to Barnes, this approach would have allowed Ms. Barnes the opportunity to explain the inconsistency and given Barnes the opportunity to cross examine her about it. Barnes claims these opportunities vanished once Ms. Barnes was released by consent from her subpoena at the conclusion of her testimony.

We see no error. Once the State confronted Ms. Barnes with the substance of her previous statement, the time and place it was made, and the person to whom it was made, and she denied making it, the foundation required by Rule 613(b)

was complete. *See State v. Bixby*, 388 S.C. 528, 551–52, 698 S.E.2d 572, 584–85 (2010) (finding State laid proper foundation under Rule 613(b) for introduction of recorded conversation after witness was excused because witness admitted having conversation at issue but denied making the statements); *State v. McLeod*, 362 S.C. 73, 81, 606 S.E.2d 215, 219 (Ct. App. 2004) (stating that under Rule 613(b), extrinsic evidence of the statement is not admissible unless witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made).

The rule does not require extrinsic evidence of the prior statement be admitted immediately. It merely authorizes the use of extrinsic evidence to prove the inconsistency. Because the impeaching evidence is "extrinsic," the avenue of its admissibility may not always run through the witness to be impeached by it, for that witness may not be competent to authenticate the extrinsic evidence. *See McCormick on Evidence* 215–16 (7th ed. 2013) (equating "intrinsic evidence" with cross-examination, as opposed to "[e]xtrinsic evidence of inconsistent statements, that is, the production of other witnesses' testimony about the statements").

In some instances—say, if the previous statement was to a third party and unrecorded—it may, for many reasons, be impossible to produce the proof while the denier remains on the stand. One reason would be the principle that no two bodies may occupy the same space at the same time. Counsel may also have strategic reasons for delaying such proof. We are not prepared to require a witness who has denied making a prior inconsistent statement to remain glued to the stand until thoroughly impeached, so a party can ask the witness to "explain" her earlier denial. *See e.g. Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1231 (5th Cir. 1984) (no requirement that admission of prior inconsistent statement as substantive evidence per Fed. R. Evid. 801(d)(1) occur while witness on stand).

We also see no prejudice. The State read the statement to the witness twice; we are unclear what difference playing the recording of the statement to her would have made. While Ms. Barnes was no longer under subpoena, we know of no reason why Barnes could not have recalled his mother to the stand,

voluntarily or not, after McCoy's testimony. Nor have we been apprised what Barnes would have asked his mother about the inconsistency that he had not already had the opportunity to pursue during her initial cross-examination.

Rule 613(b), SCRE, works in tandem with Rule 611(a), SCRE, which arms the trial court with vast discretion in controlling the mode and order of witness testimony. We find the trial court properly handled this impeachment evidence.

## IV.

For the reasons set forth, we affirm Barnes' convictions.

GEATHERS and MCDONALD, JJ., concur.