587 S.E.2d 691

The STATE, Petitioner/Respondent,

v.

Michael DUNBAR, Respondent/Petitioner.

No. 25732.

Supreme Court of South Carolina.

Submitted Sept. 16, 2003.

Decided Oct. 13, 2003.

Assistant Appellate Defender Tara S. Taggart, S.C. Office of Appellate Defense, of Columbia, for Respondent/Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Norman M. Rapoport, all of Columbia; and Solicitor Donald V. Myers, of Lexington; for Petitioner/Respondent.

PER CURIAM:

This matter is before the Court on both parties' petitions for a writ of certiorari seeking review of the Court of Appeals' decision in *State v. Dunbar*, 354 S.C. 479, 581 S.E.2d 840 (2003). We deny respondent/petitioner's ("Dunbar") petition for certiorari and grant petitioner/respondent's ("State") petition for certiorari. We dispense with further briefing and vacate a portion of the Court of Appeals' opinion because they

reached unpreserved grounds in addressing the search warrant obtained in this case.

## FACTUAL/PROCEDURAL BACKGROUND

Investigators with the Lexington County Sheriff's Department set up a controlled buy with Dunbar and his co-defendant, Smalls, based on information received from a confidential informant. The informant, in the presence of Officer Rainwater, the lead investigator of the case, called the men at their hotel room to setup the buy for five ounces of powder cocaine. The informant told Rainwater he was to meet Dunbar and Smalls, black males, at a gas station that afternoon and they would be driving a blue Cadillac with wire rims.

With officers surrounding the scene, the informant waited at the gas station for Dunbar and Smalls to arrive. Dunbar and Smalls arrived at the gas station approximately 30 minutes after the phone conversation. They were driving a blue Cadillac with wire rims. The informant got into the back seat of the car and stayed about 15 seconds before getting back out of the vehicle; this was a pre-arranged visual signal to the officers there were drugs in the vehicle. The driver, Smalls, then fled the scene and was captured after a 100–yard chase. Dunbar, who remained in the front passenger seat of the vehicle, was arrested and removed from the vehicle. An open brown paper lunch bag was found sitting upright by Dunbar's left foot. After both Smalls and Dunbar were arrested, the vehicle was searched, and the officers found five ounces of powder cocaine inside the brown paper bag.

After retrieving the cocaine from the vehicle, Rainwater noticed a hotel room key on the key chain left in the car's ignition. The key was inscribed with a room number. Based on the informant's previous dealings with Dunbar, he knew Dunbar stayed at a hotel while in Columbia. The informant had alerted Rainwater to this fact and told him to look for a hotel key. When asked, Dunbar informed Rainwater he and Smalls were staying at the Ramada Inn in West Columbia.

Based on the seizure of the cocaine and the information concerning the hotel room, Rainwater sought a warrant to search the room. Rainwater telephoned the magistrate and discussed the probable cause to issue the search warrant.

Rainwater did not, however, proceed to the magistrate's office to obtain the warrant, but instead sent another officer from his investigation team, O'Quinn. O'Quinn testified, "It was my duty to get [the search warrant] back to the agents on the scene in an expeditious manner so that hopefully if anybody was in the room that none of the evidence would be ... destroyed." While O'Quinn went to retrieve the search warrant, the investigative team went to the hotel and waited for O'Quinn's arrival.

When O'Quinn arrived at the magistrate's office, the magistrate was on the telephone with Rainwater. O'Quinn testified the magistrate drafted the search warrant and affidavit based on information received over the telephone from Rainwater. O'Quinn was sworn by the magistrate,[1] reviewed the warrant and signed the affidavit accompanying the search warrant. Although O'Quinn did not see a majority of the events that took place, he was part of Rainwater's investigative team and had personal knowledge that a narcotics deal had occurred. O'Quinn also had knowledge of the facts contained in the affidavit from the information Rainwater told him in the course of the investigation.[2]

Dunbar made a pre-trial motion to suppress the evidence based on the Fourth Amendment of the United States Constitution and the South Carolina Constitution. During the *in camera* hearing to determine the admissibility of the evidence, Dunbar's search warrant argument centered on the fact that the issuing magistrate was not neutral and detached. He also argued the affidavit lacked probable cause because O'Quinn signed it without personal knowledge and the credibility of the informant was not stated. Dunbar cited *Nathanson v. United*

1. There is no testimony whether Rainwater was sworn by the magistrate. There is very limited testimony in the record revealing the contents of the conversation between Rainwater and the magistrate. Apparently, neither party thought this fact was an issue and thus did not address Rainwater's conversation.

2. O'Quinn took the warrant directly to the hotel and, upon execution, the officers found a large quantity of powder and crack cocaine, a large sum of money, a gun, digital scales, receipts attributable to Dunbar and Smalls, and packaging material customarily used for narcotics transportation.

*States*[3] as his sole authority for the affidavit argument. The trial court rejected Dunbar's arguments and allowed the evidence to be admitted. Using a totality of the circumstances approach, he found the informant's information was corroborated and exigent circumstances required the action taken. The Court of Appeals reversed the trial judge, finding the search warrant did not comply with the warrant statute.

The Court of Appeals addressed the search warrant, and its underlying affidavit, by analyzing the issue under S.C.Code Ann. § 17–13–140 (2003), even though the statute was not argued during the trial. The State now contends the Court of Appeals erred by basing their decision to reverse the trial court on the warrant statute. We agree.

## LAW/ANALYSIS

In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal. *Humbert v. State,* 345 S.C. 332, 548 S.E.2d 862 (2001). A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground. *State v. Russell,* 345 S.C. 128, 546 S.E.2d 202 (Ct.App.2001). A party may not argue one ground at trial and an alternate ground on appeal. *State v. Prioleau,* 345 S.C. 404, 548 S.E.2d 213 (2001); *State v. Benton,* 338 S.C. 151, 526 S.E.2d 228 (2000)(argued one ground in support of circumstantial evidence charge at trial and another ground in support of the charge on appeal). No point will be considered which is not set forth in the statement of issues on appeal. Rule 208(b)(1)(B), SCACR; *State v. Bray,* 342 S.C. 23, 535 S.E.2d 636 (2000)(it is error for an appellate court to consider issues not raised to it); *State v. Prioleau,* 345 S.C. 404, 548 S.E.2d 213 (2001). An issue that was not preserved for review should not be addressed by the Court of Appeals, and the court's opinion should be vacated to the extent it addressed an issue that was not preserved. *Hendrix v. Eastern Distribution, Inc.,* 320 S.C. 218, 464 S.E.2d 112 (1995).

During trial, Dunbar never made mention of the warrant statute. His written motion makes mention of the United

---

3. 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

States and South Carolina constitutions only. During the *in camera* hearing, Dunbar cited only one federal case in support of his affidavit argument. It is not clear whether Dunbar based his argument on federal or state grounds, but nowhere in the record does Dunbar cite or make reference to the warrant statute. The Court of Appeals addressed the warrant statute *sua sponte* and was incorrect to base its decision on the statute.

Accordingly, because the warrant statute argument was not raised to the trial court below for a ruling and, thus, is not preserved for appellate review, we vacate the Court of Appeals' opinion to the extent it addresses the search warrant and the underlying affidavit at issue.

### CONCLUSION

For the foregoing reasons, we vacate the Court of Appeals' opinion reversing the trial court's decision to admit evidence obtained pursuant to the search warrant at issue and remand this issue to the Court of Appeals so it may address the United States and South Carolina constitutional issues Dunbar raised on appeal.

**VACATED IN PART AND REMANDED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.