**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Keith Christopher Osborne, Appellant.

Appellate Case No. 2014-002206

———————————

Appeal From Lexington County
Thomas A. Russo, Circuit Court Judge

———————————

Unpublished Opinion No. 2018-UP-079
Submitted December 12, 2017 – Filed February 7, 2018

———————————

**AFFIRMED**

———————————

Tommy Arthur Thomas, of Irmo, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Megan Harrigan Jameson, both of Columbia, for Respondent.

———————————

**PER CURIAM:** Keith Osborne appeals his convictions for strong armed robbery and first degree assault and battery. Osborne argues the trial court erred in admitting into evidence (1) the victim's credit card statement, and (2) a photograph of video surveillance footage. We affirm.

**FACTS/PROCEDURAL BACKGROUND**

Osborne was indicted in May 2013 for the strong armed robbery and first degree assault and battery of Helen Lang. A jury trial was held October 8-9, 2014.

Seventy-four-year-old Lang testified at trial. According to Lang, on June 12, 2012, she was approached by two men in a pick-up truck while walking to her car in the Food Lion parking lot in South Congaree. Lang testified the passenger in the truck asked her for directions then leaned out of the truck and grabbed her purse. As the driver pulled away, Lang held onto her purse and was dragged alongside the truck for a short distance before she let go. The two men in the truck fled the scene. Lang was transported to the hospital where she was treated for a fractured pelvis, broken finger, and scrapes and bruises.

Several days after the robbery, Lang met with Chief Joshua Sheumpert of the South Congaree Police Department. Lang gave Chief Sheumpert a credit card statement she had recently received from AT&T Universal to show him several fraudulent charges that were made on her credit card after it was stolen along with her purse. According to Lang, she had not used the card in years and the only purchases listed on the statement were fraudulent purchases made immediately after the robbery.

Based on the credit card statement, Chief Sheumpert determined Lang's card was used on June 12, 2012, at a McDonald's on Elmwood Avenue in downtown Columbia and at an adjacent Marathon gas station. Chief Sheumpert visited both locations. At McDonald's, Chief Sheumpert spoke with a manager who was able to determine the exact time Lang's credit card was used at the restaurant. Chief Sheumpert and the manager then reviewed the surveillance footage of the drive-thru, and Chief Sheumpert identified a pick-up truck matching Lang's description. Due to his concern that the video footage would be recorded over along with the inability of the manager to provide a copy of the recording, Chief Sheumpert used his cell phone to take photographs of the video.

Next, Chief Sheumpert went to the gas station across the street from the McDonald's where the other purchases were made with Lang's stolen credit card. Chief Sheumpert met with the manager of the gas station, viewed the surveillance footage, and observed the same pick-up truck. The manager gave Chief Sheumpert a DVD with the surveillance footage, but upon returning to his office, Chief Sheumpert was unable to view the footage. Chief Sheumpert returned to the gas

station and used his cell phone to take photographs of the video as he previously had done at McDonald's.

Lang later met with a SLED sketch artist and the resulting sketches of both suspects were released to the public. In October 2012, Osborne and Joshua Hilton were identified as suspects and subsequently arrested.

Hilton testified at trial and recounted how Osborne planned the robbery and selected Lang as the target.[1] Hilton detailed the robbery and the immediate aftermath, including discarding Lang's belongings except her credit cards, several failed attempts to use Lang's credit card, and the eventual successful use of the credit card at McDonald's and the gas station. Hilton also described the pair's attempts to avoid detection, including trading-in Osborne's truck for a different vehicle approximately one week after the robbery. Hilton testified he thought he and Osborne would be caught after seeing the suspects' sketches online. Hilton's wife also testified that Hilton confessed to her that he and Osborne robbed Lang.

The jury found Osborne guilty of armed robbery and first degree assault and battery. The trial court sentenced Osborne to concurrent sentences of fifteen years for strong armed robbery and ten years for first degree assault and battery. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, this [c]ourt sits to review errors of law only and is bound by factual findings of the trial court unless an abuse of discretion is shown." *State v. Laney*, 367 S.C. 639, 643, 627 S.E.2d 726, 729 (2006). An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012).

## LAW/ANALYSIS

### I.    Admission of credit card statement

Osborne argues the trial court erred in admitting Lang's credit card statement into evidence. We disagree.

---

[1] Hilton was also charged with strong armed robbery and first degree assault and battery.

Prior to trial, defense counsel stated his objection to the introduction of Lang's credit card statement based on hearsay, due process, and confrontation grounds. Specifically, defense counsel stated: "I would object to any testimony as hearsay from the credit card company that the card was used and without the custodian to lay the foundation for a business record, I don't think they can admit that or have her testimony. That would be hearsay." Defense counsel further stated, "I would object because it is hearsay and violates due process and cross-examination confrontation under the Sixth Amendment of the U.S. Constitution . . . ." The trial court declined to rule on the admissibility of the credit card statement at that time and instructed defense counsel to pose his objection when the State attempted to introduce the credit card statement.

In his brief, Osborne states the trial court "ruled that the statement could be admitted as a business record under Rule 803(6), SCRE, and that Lang was a 'qualified witness' because 'it's within her knowledge of what happened with her property . . . . It's her statement she can talk about it.'" This is a mischaracterization of the record. Osborne appears to attribute the State's argument for admission as a ruling by the court. The trial court did not rule on the admissibility of the credit card statement, but explicitly stated, "We'll deal with that at that time and you can pose your objection. I think it's just depending on the foundation that's laid."

During her testimony, Lang stated she received a statement for the charges on her stolen credit card after the incident. Defense counsel objected to this testimony, citing his "prior objection." The trial court overruled the objection and stated it would "allow [Lang] to testify as to what she received once [the State] la[id] [a] foundation." Lang then testified the credit card statement was from her AT&T Universal credit card that was in her name. Lang further testified she had not used the credit card "in a couple of years" and it was in her purse when it was stolen. Lang identified the credit card statement, testified she received credit card statements from AT&T Universal regularly, and confirmed the statements have been accurate. She further testified she called the credit card company after receiving the bill to confirm the charges. The State sought to move the statement into evidence, and, without any statement from defense counsel, the court stated, "And I note your objection. I'm going to allow it in." Defense counsel did not place any argument on the record as to why the statement was inadmissible at that time. Following the admission of the credit card statement, Lang testified the billing period of the credit card statement was May 19-June 19, 2012, and the only charges were the purchases at McDonald's and the gas station made on the day of the robbery and assault.

On appeal, Osborne asserts the credit card statement was hearsay and did not fall under any of the hearsay exceptions. Specifically, Osborne argues the business records exception found in Rule 803(6), SCRE, does not apply because there was no evidence Lang had knowledge of how the statement was created in the normal course of the credit card company's business nor was there any evidence Lang was conveying information imparted to her by a person with knowledge of how the statement was generated.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Rule 801(c), SCRE. Hearsay is inadmissible unless an exception or an exclusion applies. Rule 802, SCRE. One such exception is the business records exception, which states:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness. . . .

Rule 803(6), SCRE.

We find the trial court erred in allowing the credit card statement into evidence under the business records exception. Lang was neither a custodian of the statement nor a qualified witness familiar with the how the statement was generated in the regular course of business. However, we affirm the trial court because we find the admission of the statement was not prejudicial to Osborne. The statement did not identify Osborne as the individual who used the card at the McDonald's or the gas station. In addition, we note Hilton testified, without objection, that he and Osborne used Lang's credit card at the McDonald's and the gas station.

## II.    Admission of photograph

Osborne argues the trial court erred in admitting a photograph of video surveillance footage from the McDonald's. We disagree.

Chief Sheumpert testified he went to the McDonald's location where Lang's credit card was used and viewed the surveillance footage of the transaction with the store manager. Chief Sheumpert testified he used his cell phone to take photographs of the video due to concerns the video footage would be recorded over and an inability of the manager to provide a copy of the video. Chief Sheumpert identified State's Exhibit No. 3 as one of the photographs he took of the surveillance footage and described what was occurring in the picture. Following this testimony, the State sought to move the photograph into evidence. The trial court asked defense counsel if he had any objection and counsel responded, "It's the same as stated on the record." However, defense counsel had not made any prior argument on the admissibility of the photograph, including during his pre-trial objection which pertained to the admission of Lang's credit card statement. Pre-trial, defense counsel informed the trial court he was provided with the photographs and stated, "I don't think there's anything further regarding those." The court allowed the photograph from the McDonald's video surveillance into evidence.

On appeal, Osborne contends the trial court erred in admitting the McDonald's photograph because the State did not satisfy the requirements for admission pursuant to Rule 803(6), SCRE. Specifically, Osborne argues Chief Sheumpert was not a qualified witness with knowledge as to how the underlying surveillance footage was generated or stored. Additionally, Osborne asserts the State failed to provide a proper chain of custody for admission.

These arguments are not preserved for our review because Osborne failed to present them to the trial court. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]."); *id.* at 142, 587 S.E.2d at 694 ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground.").

**CONCLUSION**

We affirm Osborne's convictions for strong armed robbery and first degree assault and battery.

**AFFIRMED.**[2]

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.

**LOCKEMY, C.J., and HUFF and HILL, JJ., concur.**