**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Jharaun Montyce Washington, Appellant.

Appellate Case No. 2023-000468

———————

Appeal From Jasper County
Robert J. Bonds, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-004
Heard October 16, 2025 – Filed January 14, 2026

———————

**AFFIRMED**

———————

Appellate Defender Gary Howard Johnson, II, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General J. Anthony Mabry, all of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, all for Respondent.

———————

**PER CURIAM:** This appeal arises from Jharaun Montyce Washington's convictions for murder and possession of a weapon during the commission of a violent crime. On appeal, Washington argues the trial court erred in denying his motion for directed verdict as the State failed to present evidence of a preexisting animus or agreement to fight and therefore failed to meet the elements necessary to establish mutual combat. He asserts this failure means the State failed to produce evidence he committed murder as alleged in his indictment. We affirm because we find this issue is not preserved for our review.

## FACTS/PROCEDURAL HISTORY

Washington was at his mother's home at Walsh Drive Apartments in Hardeeville, South Carolina on April 22, 2020. He and several others had gathered immediately outside the apartment. Xavier Rivers and three others drove by the apartment in a Chevrolet Malibu toward the apartment of Rivers's sister, who also lived in the complex. Donovan Hay (Victim) was the driver. Surveillance video shows Washington and another person positioned themselves behind the open door of a white Cadillac in the parking lot. Rivers's car stopped behind a large bush, and he retrieved a semi-automatic rifle from the trunk. Washington fired a shot, and the two groups exchanged fire. Washington shot twenty-two times, and Rivers likely shot approximately five times based on recovered shell casings. Rivers and another passenger in the Malibu fled the scene on foot. Victim had been shot during the exchange of gunfire.

Eventually, both Washington and Rivers were arrested, and both were charged with murder under the theory of mutual combat. They were tried together, and each defendant was represented by his own attorney. Both made directed verdict motions. Rivers argued the State presented no evidence he killed anyone or that he demonstrated malice aforethought. He further contended this was not a mutual combat case and the State failed to present evidence of prior ill will or an agreement to engage in mutual combat. Washington joined Rivers's mutual combat argument and also argued the State had failed to definitively identify him and had failed to prove malice aforethought. The circuit court denied the motions stating:

> I'm getting ready to make my ruling for the record, okay?
> I also find that to constitute mutual combat, it's not
> necessary that there should be a positive agreement
> between the participating parties to enter into combat.
> It's sufficient if they willfully enter into conflict upon the
> impulse of the moment. I'm not passing any judgment on

the strength of the case, but what I would say is, as it relates to mutual intent, I mean I think clearly there's the existence of evidence that shows there's some type of mutual intent, when there's evidence that the Defendants are basically going to get their guns, Mr. Rivers and -- which I think the evidence is very clear that Mr. Rivers was getting the gun.

At the same time there is some evidence to suggest that Mr. Washington is going to get a gun. As far as to an agreement, I don't think there has to be a stated agreement, as in we sit down and say, hey, let's agree to duke it out, you get your gun, I'll get my gun, let's go for it.

I think the agreement can be upon the impulse of the moment, and I think that's clear -- I think there's evidence that that could be what happened here. I think both these individuals were armed with a weapon. I think there's evidence -- I think there's the existence of evidence, as it relates to that.

As it relates to identity of Mr. Washington, I think that the Facebook exhibit involving the shootout, that could be interpreted a lot of different ways, but I think that one of the ways that that could be interpreted is that he was involved in a shootout, as in he was shooting that gun. I also think, and I'm sorry, I don't recall the woman's name, but she testified yesterday afternoon, and, yes, sir, while she was not able to identify Mr. Washington in the photo lineup, she did, again, I'm not passing any judgment on the strength of her identification, but I recall that she did indicate that he was the shooter, and that she knew him, and was able to identify him, because she had been maybe at a friend or some relative's house who lived very close or next door to his mother, and she had seen him there at the mother's. So I think that as far as meeting the elements, giving the State in this case quite frankly every

benefit of the doubt, which I'm charged to do at this point, I believe that there's enough evidence for this case to move forward for the jury to consider.  Hold on.

So I think with all that, I'm going to respectfully deny both [defendants'] motion[s], and allow this matter to go to the jury for their consideration, all right?  Thank you.

In closing argument, Washington advocated for the lesser charge of voluntary manslaughter:

When you're a defense attorney representing a client at trial, your ultimate goal is to convince the jury that your client's not guilty.  I'm not going to do that here.  My client is guilty, he's just not guilty of murder.

. . . .

Again, with no explanation as to why any of this happened in the first place.  If this scenario isn't the very definition of an unlawful killing without malice, I'm not sure what is.  That is why I'm asking you to find my client, Jharaun Washington, not guilty of murder, but I am asking you to find him guilty of voluntary manslaughter.

The circuit court charged the jury first on the elements of murder (with no reference to mutual combat), then voluntary manslaughter, and then mutual combat.  The jurors were also instructed that the defendants' charges were to be considered independently.  The circuit court advised:

I want you to know each indictment charges a separate and distinct offense, and you must decide each indictment separately on the evidence, and the law applicable to it uninfluenced by your decision as to any other indictment.

 . . . .

The case of each Defendant and the evidence and

the law concerning that Defendant should be considered separately and individually. Your verdict does not have to be the same for both Defendants. The fact that you may find one Defendant guilty or not guilty should not control your verdict as to the other Defendant. Where more than one person is charged with a crime, if the evidence warrants it, you may convict one and acquit the other, or you may acquit both, or you may convict both, it will depend on your view of the testimony in evidence.

These charges were given without objection.

Rivers was acquitted on all charges, and Washington was convicted of murder and possession of a weapon during the commission of a violent crime. Washington moved for judgment notwithstanding the verdict (JNOV) on the same bases previously argued and on the basis that the verdicts were inconsistent. The circuit court denied his motion, and this appeal followed.

**LAW/ANALYSIS**

On appeal, Washington argues the circuit court erred in denying his directed verdict motion, because his indictment alleged mutual combat between himself and his codefendant and he therefore could not be convicted without proof of each element of mutual combat. We find this precise issue was not raised to or ruled upon by the trial court and is therefore not preserved for our review.

In *State v. Young*, our supreme court approved of the offensive use of mutual combat as a theory of criminal liability, stating "[t]oday, we extend our jurisprudence and hold that each participant who willingly engages in mutual combat may be held accountable for the death or injury of an innocent bystander resulting from that confrontation." 429 S.C. 155, 166, 838 S.E.2d 516. 522 (2020). In *Young*, the defendants were charged with murder under the theory that they engaged in mutual combat, and the appeal was of a party who did not actually shoot the victim. *Id.* at 157, 838 S.E.2d at 517. In that case, the court elucidated "[o]f course, mutual combat is not a stand-alone crime in South Carolina. Rather, it is a theory of criminal liability that underlies a recognized crime such as murder or manslaughter." *Id.* at 157 n.1, 838 S.E.2d at 517 n.1.

Here, the trial court ruled the State had provided sufficient evidence to send the issue of mutual combat to the jury. However, the specific issue of whether Washington's guilt was wholly dependent on a finding of mutual combat based on his indictment, as argued on appeal, was not raised to the circuit court. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge."); *State v. James*, 362 S.C. 557, 562, 608 S.E.2d 455, 457 (Ct. App. 2004) (providing arguments not raised to the trial court in support of a directed verdict motion are not preserved for appellate review). This issue was arguably discussed during the State's response to the directed verdict motions.

> THE COURT: Do you have to prove that beyond a reasonable doubt? Are you saying that you don't -- I mean you've indicted -- so what I want to know is, do you -- as part of this, do you have to prove mutual combat beyond a reasonable doubt, and that that mutual combat then, basically, resulted in the death of [Victim]; is that what you've got to prove, mutual combat?
>
> [THE STATE]: That is what occurs when they are indicted for murder for engaging in mutual combat.
>
> THE COURT: Right. So -- okay, go ahead.

However, discussion between the court and the prosecution alone is not sufficient to preserve an argument. *See State v. Williams*, 439 S.C. 620, 622-23, 889 S.E.2d 562, 563 (2023) (finding appellate issue regarding transferred intent was unpreserved and only "unveil[ed] on appeal" when defendant did not specifically raise it at trial and it was brought up only by the State and the trial court); *see also Dunbar*, 356 at 142, 587 S.E.2d at 694 ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground."). Furthermore, the circuit court's instruction that the defendants' guilt should be considered separately was in direct opposition to the State having to prove mutual combat to convict Washington. This instruction permitted the jury to (1) acquit both parties; (2) find both parties guilty, which would require a finding of mutual combat; or (3) find Washington was guilty and Rivers was not—precisely what the jury did. However, Washington did not object

to the instruction, and its propriety is not raised on appeal.[1]  Although the State does not raise preservation in its brief, we conclude the issue presented on appeal was not sufficiently preserved for our review.  *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[W]e are not precluded from finding an issue unpreserved even when the parties themselves do not argue error preservation to us.").

**AFFIRMED.**

**KONDUROS, GEATHERS, and VINSON, JJ., concur.**

---

[1] Having failed to object to the jury instruction, Washington cannot now, on appeal, attempt to insinuate the issue of mutuality as a requirement for his conviction into his directed verdict motion.  Additionally, Washington's argument that he was guilty of voluntary manslaughter, a crime also supported under the theory of mutual combat, buttresses our conclusion the specific issue on appeal was not part of Washington's directed verdict motion.  Ineluctably, the voluntary manslaughter conviction would also have failed if a mutual combat finding was required to hold Washington responsible for Victim's death.  *Young*, 429 S.C. at 157 n.1, 838 S.E.2d at 517 n.1 (explaining mutual combat "is a theory of criminal liability that underlies a recognized crime such as murder *or manslaughter*." (emphasis added)).