**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Clinton Warren Beebe, Appellant.

Appellate Case No. 2022-000627

———————

Appeal From Kershaw County
Daniel Dewitt Hall, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-301
Heard March 10, 2026 – Filed June 17, 2026

———————

**AFFIRMED**

———————

Chief Appellate Defender Wanda H. Carter, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Solicitor Byron E. Gipson, all of Columbia, all for Respondent.

———————

**PER CURIAM:** Clinton W. Beebe appeals his conviction for murder and his sentence of life in prison. He argues the trial court erred in admitting evidence that

he allegedly abused his wife. He contends this was inadmissible "prior bad acts" evidence that violated Rules 403 and 404(b), SCRE.

First, we agree with the State that some of this evidence was admissible as a way of rehabilitating an attack on Beebe's wife's credibility. Second, we are convinced Beebe did not preserve objections to the instances where he claims the testimony exceeded the boundary of what was permissible. For these reasons, we affirm.

## BACKGROUND

A Kershaw County grand jury indicted Beebe and his wife Dani for the murder of Beebe's friend Adam Davis. Beebe was tried first.

During opening statements, the State alleged Davis went missing after he was last seen in Dani's vehicle riding with Beebe and Dani one night in December of 2016. The State claimed that during the ensuing missing persons investigation, Beebe and Dani covered up the fact that Beebe had killed Davis. Investigators eventually discovered Davis's blood in Dani's vehicle and his body buried not far from Beebe and Dani's home. The State said Dani would testify that Beebe shot Davis and immediately began efforts to dispose of the body and other evidence. The trial occurred in 2022, years after Davis went missing.

Beebe did not dispute killing Davis. He claimed the shooting was an accident and that he and Dani jointly planned the cover-up. He attacked Dani's credibility by highlighting that she had given inconsistent statements about what happened: one during a January 2017 interview with law enforcement, and one during a March 2022 interview with solicitors containing "a different story." The 2022 statement came on the eve of Dani's own murder trial.

The State presented expert testimony confirming Davis died of a gunshot wound and extensive evidence implicating both Beebe and Dani in the cover-up. However, to prove malice, the State relied exclusively upon Dani's eyewitness testimony. Before Dani took the stand, and outside the jury's presence, Beebe objected to the admission of testimony about a portion of Dani's 2022 statement alleging he physically abused her. Beebe argued this testimony was inadmissible propensity evidence under Rule 404(b), SCRE, and irrelevant to prove murder.

The State explained it planned to elicit Dani's testimony about "years of abuse" spanning her "entire relationship" with Beebe, including:

specific instances where he'[d] broken her nose, where he dr[agged] her with a car, where he put a gun in her mouth. And the reason that it's relevant to this case is it's the motive for why she does not tell. It is also the motive for why she continues to help him cover this up after it's over. So . . . this has nothing to do with his motive. It has everything to do with her motive.

A back-and-forth argument followed—still outside the jury's presence. Beebe argued the alleged prior acts of abuse were inadmissible under Rule 608, SCRE, to contextualize Dani's actions, and also under Rules 401, 402, and 403, SCRE, because the prior acts were irrelevant to the issue of malice and their prejudicial value "greatly outweighed" their probative value. The State explained Dani would testify Beebe had the same "look in his eye" when he shot Davis as he did when he put a gun in her mouth, thereby "directly" showing why she continued the cover-up and did not tell law enforcement until she was away from Beebe. It argued that because Beebe had already told the jury that Dani "changed her story," her testimony about the abuse was more probative than prejudicial because it explained why Dani—"the only other eyewitness" to the shooting—initially failed to provide a "complete" story.

The trial court ruled,

> It seems to me that the State is allowed to in a general way ask [Dani] why she [described events] one way in 2017 and . . . another way in March of 2022. . . . [T]hat seems to be relevant a[s] to why she would change, but then . . . going into specific instances of conduct such as putting a . . . gun into her mouth . . . then you enter into a world of a trial within a trial about whether that, in fact, took place . . . and that becomes problematic and not allowed under the rules. . . . I don't have a problem with them asking in a general sense [why Dani changed her statement, or] in a general way about her fear, but to go into . . . specific instances of conduct about the defendant would be improper, and I'm not going to allow that in.

When the jury returned, Dani testified she was thirty-three years old at the time of trial and that she had been in a relationship with Beebe since she was fifteen and he was twenty-three. She stated that when she, Beebe, and Davis arrived at the house

the night of the shooting, she went inside a "minute or two" after the men; when she entered, she saw Davis sitting in a living room chair and Beebe returning from the bedroom. Dani stated the three then sat together in the living room with the television on. She said that a short time later, without conversation, Beebe "just took the gun and just pointed it at [Davis] and . . . shot him in the head." Dani said she was in shock, started screaming, and asked Beebe why he had shot his friend. She said Beebe stood and "put the gun [down]" in silence, then looked at Davis and said, "[I'm] f[***]ed." Dani testified Beebe then told her they had to "hurry up and get him out of [there] before somebody c[ame]." Dani recounted that she then helped Beebe load the body into her vehicle and followed his instruction to drive to a dirt road on his grandparents' property. Dani explained they buried the body in a wooded area alongside the dirt road and then returned to their house where Beebe began destroying evidence of the shooting.

When asked why she helped Beebe after the shooting, Dani replied, "[H]e [had] just killed someone that he grew up with for absolutely no reason" and she "was scared to argue" with him. When asked why she was scared to argue, she answered, "Because he[] . . . has always been abusive to me and had . . . threatened me in the past." Dani indicated she lied to law enforcement during the investigation because Beebe had instructed her to tell everyone Davis left their house overnight, and she was too afraid of him to disobey. When asked why she never told the truth, she replied,

> [A]ny time that I have mentioned that I wanted to tell . . . I was told that I was a stupid sh[**] b[****] and that I'd be stupid if I said anything because he wouldn't be the only one to go down, that I would be taken away from my daughter and I would never see her again . . . . [H]e never threatened my actual life, but he threatened . . . worse because he used her as a weapon against me[.]

Dani explained she told the truth in 2022 because during the ten months before trial, she had been away from Beebe for the first time and felt "free." When asked "again" why she was afraid of Beebe, she answered, "Because there[ wasn't] a day" he was "just nice and good" to her; "if [she] wasn't physically being hit," he was "constantly" calling her "a stupid sh[**] b[****]" or "trash." There was no objection to any of this testimony.

The defense called Dani's former boss, Steve Mooneyham, who confirmed he had never observed Dani with "black eyes, [a] broken nose, [or] bruises or anything."

On cross-examination, the State asked Mooneyham whether he saw the "broken nose that [Dani] had" or "the black eye that she had," and whether he was present when Beebe "put her head through the wall" or "put the gun to her face." He answered "no" to the first three questions before Beebe raised a general objection, which the trial court immediately sustained. Mooneyham and six additional defense witnesses—three of whom saw Beebe and Davis together the night of the shooting—testified to the effect that they had never observed any animosity between Beebe and Davis or Dani.

Beebe testified that on the night of the shooting, Davis asked to see a new gun Beebe had purchased when they entered the house. Beebe said the shooting was an accident, explaining that he cleared the gun's chamber, was certain it was empty, and pulled the trigger as he set the gun down for Davis to inspect. Beebe averred that when the gun went off, he "immediately dropped" it, cursed, and doubled over from nausea when he saw Davis. He testified both he and Dani "completely panicked," and that she "wasn't comprehending" when he tried to explain it was an accident. Beebe said he began to call a friend in law enforcement, but Dani began "crying hysterically" out of fear about what would happen to their family if he went to jail. He stated he "stupid[ly]" responded that they would "need to get [the body] out of [the house]," so they loaded the body into Dani's vehicle. Beebe testified he "would have never pulled the trigger" if he had known the gun was loaded and that there were "no problems whatsoever" between him and Davis.

Beebe did not request a limiting instruction regarding the abuse-related evidence, and the trial court did not provide one. During deliberations, the jury asked to hear for a second time both Dani's testimony and Beebe's testimony regarding the shooting, as well as the definition of reasonable doubt. The jury convicted Beebe of murder, and the trial court sentenced him to life in prison. This appeal followed.

## STANDARD OF REVIEW

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

## ANALYSIS

Beebe argues the trial court abused its discretion in admitting Dani's testimony about his prior acts of abuse. The trial court did not clearly identify the basis for its

admission of the challenged testimony. We initially address which grounds were pertinent to its admission.

At trial, the State argued Beebe's prior acts of abuse were admissible under Rule 404(b), SCRE, to show Dani's motive for lying to law enforcement and covering up the shooting. Although Beebe and Dani were similarly charged with Davis's murder, only Beebe was on trial at the time of Dani's testimony. *See State v. Perry*, 430 S.C. 24, 30, 842 S.E.2d 654, 657 (2020) ("Rule 404(b) prevents the State from introducing evidence of *a defendant's* other crimes for the purpose of proving *his* propensity to commit the crime for which *he* is currently on trial." (emphasis added)). Precedent supports a conception of Rule 404(b) as allowing a defendant's prior bad act to explain someone else's conduct (such as Dani's testimony that she lied to law enforcement). *See State v. Galloway*, 443 S.C. 229, 244, 904 S.E.2d 866, 874 (2024). But even if that conception is inapplicable here, we see the testimony about prior abuse as plainly admissible for the purpose of impeaching Dani's 2017 statement to law enforcement and bolstering the credibility of her trial testimony. *See* Rule 607, SCRE (stating witness credibility is subject to impeachment by the party calling the witness).

Dani's testimony that Beebe intentionally shot Davis was the State's only evidence of malice. However, before Dani took the stand, her credibility was placed at issue by uncontested evidence that she was also charged with murder, had maintained for five years that Beebe was not involved in Davis's death, and that she did not implicate Beebe until less than a month before trial. Under these circumstances, Dani's testimony that Beebe's abuse made her too afraid to refuse the cover-up or to tell the truth until they had been separated for months tended to show: (1) her 2017 statement to law enforcement was false; (2) her fear of Beebe, which motivated that statement, no longer existed at the time of trial; and thus (3) her trial testimony was credible. Evidence of the prior abuse was admissible under Rule 608 to rehabilitate Dani's credibility in light of her prior inconsistent statement and delayed disclosure. *See* Rule 608(a), SCRE (providing for the admissibility of opinion or reputation evidence regarding the witness's truthful character after their truthful character has been challenged); Rule 608(c), SCRE ("[A]ny motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.").

Whether the probative value of Beebe's prior abuse was substantially outweighed by the risk of unfair prejudice is a closer question, particularly given the absence of a limiting instruction and the narrow departures between Beebe's testimony and Dani's testimony. Here, as explained below, we are constrained by the lack of objection to

any portion of Dani's testimony that exceeded the trial court's ruling. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court].").

Beebe appears to contend that the trial court's error was in failing to *enforce* its exclusion of testimony about "specific instances" of the alleged prior abuse. Put differently, we understand his argument to be that the trial court allowed the State to go too far in eliciting testimony about the alleged abuse. Dani's trial testimony was not nearly as specific as the instances of abuse alleged in her proffer. Beebe asserts that Dani exceeded the scope of the trial court's ruling when she stated there was "not a day" since she was fifteen that Beebe had not abused her and that "[i]f [she] wasn't physically being hit," she was "constantly" being called derogatory names. Additionally, he avers the State ran afoul of the trial court's ruling when it elicited Dani's testimony indicating Beebe called her "fat," and when it cross-examined Mooneyham about specific instances of abuse.

We have already explained why some evidence of the alleged abuse was plainly admissible to rehabilitate Dani's credibility. If Beebe believed the State was exceeding the scope of the trial court's ruling, it was incumbent on him to object. The only objection to any of this testimony occurred when the State asked Mooneyham whether he was present when Beebe "put the gun to [Dani's] face." As we already noted, the trial court immediately sustained the objection. Because Beebe failed to raise and preserve any contemporaneous objections to the testimony he challenges on appeal, we find the trial court had no meaningful opportunity to consider whether the testimony violated its ruling prohibiting the discussion of specific instances of abuse. *See State v. Morales*, 439 S.C. 600, 609, 889 S.E.2d 551, 556 (2023) ("A trial court's opportunity to rule necessarily includes both parties being aware of the nature of the objection such that they may present their best arguments addressing *that* objection."); *id.* at 607, 889 S.E.2d at 555 (stating that "[w]hen additional evidence is offered" between a preliminary ruling and the admission of the evidence at issue, "an additional, contemporaneous objection is usually required" because "the evidence developed during [the interim] may warrant a change in the ruling" (alteration in original) (quoting *State v. Jones*, 435 S.C. 138, 144, 866 S.E.2d 558, 561 (2021))). Beebe never articulated to the trial court why its prohibition on testimony about "specific instances" of abuse should have applied to

testimony about routine acts of hitting and name-calling that typified the abuse.[1] *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("[A]n objection must be sufficiently specific to inform the trial court of the point being urged by the objector."). Even on appeal, Beebe has not identified the juncture at which testimony describing specific contents of abuse would necessarily equate with testimony describing "specific instances" of abuse. In turn, this court is unable to meaningfully consider whether the trial court erred in allowing the testimony Beebe now challenges. *See Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct. App. 2006) ("Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide us with a platform for meaningful appellate review.").

**CONCLUSION**

Based on the foregoing, we hold evidence of Beebe's alleged abuse was admissible "rehabilitation" evidence but that Beebe's other arguments are not preserved for appellate review. *See Dunbar*, 356 S.C. at 142, 587 S.E.2d at 693 ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]."). Accordingly, we affirm.

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

[1] Here, we merely distinguish between the categories of specific information and general information. Without reaching any factual considerations, we recognize that hitting and name-calling are abusive behaviors.